## E. B. AND J. COLGIN v. THE STATE BANK.

1. The notice which the law requires to be given in summary proceedings, is sufficient, if it describe the debt upon which the motion is to be made with reasonable certainty.

2. When the Bank moves for judgment against two defendants, one, though a surety and released by his principal, is not a competent witness for the other.

3. An indorsement on the note, of the sum for which it was discounted, and the date of the discount, is an admission on the part of the Bank, of the sum lent upon the note, of which the defendant may avail himself, as otherwise the inference would be, that the Bank was entitled to recover the entire amount.

4. The Bank Commissioners appointed under the act of 1846, whether by the Legislature, or by the executive to fill a vacancy, are public officers, of whom all courts will take judicial notice.

Error to the Circuit Court of Tuscaloosa.

THIS suit was commenced by motion. On the 14th July 1841, a notice was issued by the President of the Bank, as follows :

To Edward B. Colgin, William R. Colgin, and John Colgin—You are hereby notified, that the President and Directors of the Bank of the State of Alabama, will, by their attorney, move the circuit court to be held for the county of Tuscaloosa, at the court house of said county, on the third Monday of September next, for judgment against you on a note due from you to the State Bank, discounted on the 27th March, 1839, for eighteen hundred dollars, payable to the President and Directors of said Bank, ninety days after the date thereof, and negotiable and payable at said Bank, when and where, &c.

This notice was returned executed on the plaintiffs in error.

At the September term, 1841, of the court, (as appears from a bill of exceptions,) the motion indicated by the notice

was docketted, and continued; at the succeeding March term the death of W. R. Colgin was suggested, and the motion abated as to him, and the cause continued. At each succeeding term of the court, until the September term, 1846, the motion was continued, sometimes by the plaintiff, and at this term, when the motion was called, the court was moved not to take jurisdiction, because it did not appear of record that the notice was produced, and the motion indicated by it submitted to the court at the September term of the court, 1841, which motion the court rejected, and the defendant excepted. The defendant, John Colgin, then pleaded *non assumpsit.*

The plaintiff then read the notice, and offered to read a note as follows:

$2,000.                              *Sumter Co.* ..... 1839.

Ninety days after date, I, Edward B. Colgin, as principal, and William R. Colgin, and John Colgin, as securities, jointly and severally promise to pay the President and Directors of the Bank of the State of Alabama, or order, two thousand dollars, for value received, negotiable and payable at said bank.                    E. B. COLGIN,

W. R. COLGIN,

JOHN COLGIN.

On the left hand margin, on the face of the note, was written in red ink, "Disc't 27th March, 1839, for eighteen hundred dollars."

. The defendant moved to exclude the note from the jury, upon the ground that it was not properly described in the notice, and for the variance between the note offered, and the notice, which was overruled, and the defendant excepted.

The plaintiff also offered in evidence a paper, partly printed and partly written, which was attached to the note by wafers, as follows:

*Tuscaloosa, May* 23*d*, 1846.

We, the undersigned commissioners, and trustees, under the act of the legislature of the State of Alabama, entitled an act to regulate the affairs of the banks, and to provide for the payment of the State bonds, approved February 4th, 1846, hereby certify that the note hereto attached, is really and

*bona fide* the property of the President and Directors of the
Bank of the State of Alabama.               F. S. Lyon,
                                            Wm. Cooper,
                                            C. C. Clay,
                                            P. P. Wm. Hawn.

The plaintiff also produced and read, a power of attorney
from F. S. Lyon, Wm. Cooper, and C. C. Clay, styling them-
selves commissioners and trustees, appointed under the act of
the 4th February, 1846, to William Hawn, by which they
appointed him their attorney, to make the certificate, which
previous to the passage of the aforesaid act, was required to
be made by the President of the Bank, necessary to the con-
duct or management of suits for, or in favor of the bank—
which was dated 18th April, 1846.

To the reading of the certificate the defendant objected,
but the court permitted it to be read, and the defendant ex-
cepted.

This being all the testimony of the plaintiff, the defendant
offered to read a deposition of E. B. Colgin, he having been
released before it was taken by the defendant.

The plaintiff objected to the reading by the defendant of
the deposition, because the deponent was a party to the re-
cord. The counsel in the cause stated to the court, and of-
fered to verify it by affidavit, that they never had been coun-
sel for E. B. Colgin, or appeared or pleaded for him, but they
appeared and pleaded only for John Colgin. The court sus-
tained the objection, and the defendant excepted.

This being all the evidence in the cause, the defendant
asked the court to charge the jury, that on this evidence the
plaintiff could not recover, which the court refused, and
charged the jury, that on the evidence, they must find for the
plaintiff.

The defendant then moved the court to charge, that if
there was no other evidence that said note was discounted
by said bank, except the memorandum in red ink, and there
was no evidence by whom the said memorandum was made,
that then the plaintiff could not recover; which the court re-
fused to give, but charged the jury, that all that appeared on
the note was evidence of itself, without further proof. To

the charges given, and to those refused, the defendant excepted.

The assignments of error present all the questions raised upon the record.

PECK, for plaintiff in error.

P. MARTIN, contra.

ORMOND, J.—The first point made, that the motion was discontinued because not made at the first term, and continued, is not sustained by the record. It does appear from the bill of exceptions, that the motion was placed on the docket at the September term, 1841, that being the term at which the motion indicated by the notice was to be made, and regularly continued from that term, down to the trial of the cause. Whether, if such had not been the fact, it would not have been waived by the subsequent appearance of the defendant, and the continuance of the motion at his instance, is a point we need not now determine.

The defendant having appeared and pleaded, and an issue being made up and submitted to a jury, the proceeding lost its summary character, except that to sustain the jurisdiction it was necessary to show, that the note sued on was the property of the bank; in all other respects it is to be governed by the rules which regulate suits commenced in the ordinary mode. This question was fully considered in Smith v. The Branch Bank at Mobile, 5 Ala. 26, where the result of all the cases on this subject is stated to be, that "if the defendant appear, it will be evidence of notice, and if an issue is made up between the parties and submitted to a jury, it is then like any other cause commenced in the ordinary mode, except that it must appear upon the record that the court had jurisdiction to entertain the motion."

Here the defendant appeared; there was therefore no necessity for the production of the notice, as that was admitted by the appearance. The plea of the defendant, when an issue is tendered, is not to the notice, but to the motion, which the plaintiff makes for judgment upon the debt sought to be recovered. It was not therefore competent for the defendant,

29

having pleaded to the merits, to move a rejection of the note, for a variance between that and the notice. But as a material difference between the note, or other security offered in evidence, and that described in the notice, would be an available defence to the defendant, either by plea, or by a motion to quash the proceedings, and as the whole proceeding was conducted without any regard to form, and the notice was in fact produced and read by the plaintiff, we will consider it as if the appropriate motion had been made by the defendant.

The notice being merely designed to apprise the defendant of the intended motion, nothing more is necessary, than that it should describe the debt upon which the motion was to be made with reasonable certainty. The rules of the common law in respect to a variance in pleading, have no application to such a case as this. Indeed, the statute does not in terms require the notice to be in writing. This precise question arose in this court at an early day in Lyon v. The State Bank, 1 Stew. 442. The notice in that case was identical in its terms with the present, and on a motion to quash, the court held it to be sufficient, saying that a notice in writing, which so far identifies the debt for which judgment will be moved, as to afford reasonable certainty, is sufficient. This is the leading case upon these summary proceedings, and has been adhered to from that day to this. Nor if the question was now open, would it be possible to doubt, that this notice did give the defendant full information of the precise debt, upon which the motion was to be predicated, and this was all the statute contemplated. If necessary, it would also be worthy of inquiry, whether such a motion could be entertained, five years after the appearance of the party.

The case of Turner v. Lazarus, 6 Ala. 875, is a decisive authority in favor of the decision of the court below, respecting the deposition of E. B. Colgin. The bank could have selected one of the makers of the note, or have embraced them all in its motion for a judgment. It did move for a judgment against E. B. and J. Colgin, and this in its effect is precisely the same as if it had commenced a suit in the ordinary mode against them jointly; and as in the latter case a discontinuance as to one, or a judgment in favor of one,

would be a discontinuance of the entire action, it follows that E. B. Colgin was not a competent witness for his co-defendant. It does not change the rule, that one of the parties is a mere surety, being sued jointly, the judgment must be joint, either for or against both ; and a several judgment in favor of one defendant, would be a discontinuance of the action as to the other.

The charge moved for by the defendant, that the plaintiff could not recover, without proving by whom the memorandum in red ink on the face of the note was made, proceeds upon the supposition, that the *onus* of proving for what amount the note was discounted, lay upon the bank. The necessary inference from the appearance of this note, and the attending circumstances, is, that the note was made and offered to the bank for discount. It is filled up with the sum of $2000, and is without a date, and the writing upon the face of the note in red ink, is for the purpose of showing what sum was lent upon the note, and the time when it was lent. The fact that the bank had possession of the note, is *prima facie* evidence of title, which it could only obtain by a discount of the note, and if the bank had not made this entry upon the face of the note, the presumption would be that it had discounted the note for the entire amount for which it was executed, and it would have devolved upon the defendant to aver and prove, that it was discounted for a less sum than the note on its face called for. The only effect then of the memorandum on the face of the note, was an admission by the bank of the true sum due upon it. From this it appears, that the court correctly refused the charge which was moved for, and although the court erred in the charge which was given, considered as an abstract legal question, it was an error which, so far from prejudicing, benefited the defendant, as without the memorandum, the possession of the note was evidence of title in the bank for the full amount.

In Findley v. The State Bank, 6 Ala. 244, we held that when the bank refused to discount a note, unless additional security was given, the mere possession of the note, no additional security being given, was not evidence that the bank had afterwards discounted it. Here no suspicion was cast

upon the title of the bank, and the possession was evidence *prima facie* of ownership.

The remaining question relates to the jurisdiction of the court, which depends upon the validity of the certificate made by Mr. Hawn as the agent of the bank commissioners, that the debt was *bona fide* the property of the bank.

The objections which have been taken to this certificate, involve a consideration of the true character of the commissioners, appointed under the act of the last session of the legislature, "to regulate the affairs of the bank, and provide for the payment of the State bonds." This act vests the entire interest of the State in the State Bank and its branches, in certain persons, for the purpose of collecting the debts due the bank, and for the payment of the State debt, giving to them large discretionary power, and before entering upon their duties, they were required to execute a bond, and take and subscribe an oath, which were to be filed in the office of the Secretary of State.

It is very clear that the commissioners are public officers, whom the court will judicially notice, as well from the nature of their appointment, as the character of the trust reposed in them, which concerns all the people of the State. This is not denied as it respects the commissioners elected by the legislature, but it is supposed that Mr. Clay, who was appointed by the Governor to fill a vacancy, does not stand in the same predicament. We are not able to perceive any difference in principle between the two cases. An appointment by the executive, during the recess of the legislature, is of the same force and validity for all purposes, during the period for which it was made, as if made by the legislature. He is in such cases the appointing power, and is not the less so, because the appointment is made "with the concurrence of the remaining commissioners." He is notwithstanding the source of the power, and the right of the commissioners is a mere veto upon his nomination, if not acceptable to them. Besides, his bond and oath of office are on file in the office of the Secretary of State. In a word, the high public trust reposed in these commissioners, the source from which their title to the office emanates, and the evidence of their right to exercise it on file among the archives of the government,

demonstrate that these officers, whether appointed by the legislature, or by the executive, belong to that class, of which it is the duty of all courts to take judicial notice.

But if the appointee of the executive had not the same attributes as those appointed by the legislature, the act of the majority of the commissioners would be valid, and would not be affected by the fact, that an unauthorized person united with them in its execution. It is a well recognized principle, that where business of a public or judicial nature is entrusted to several, the majority may act. [Grindley v. Barker, 1 B. & P. 228; Com'rs of Alleghany Co. v. Leckey, 6 S. & R. 170; Downing v. Rugar, 21 Wend. 182.] We are therefore clear, that both on principle and authority, in any possible aspect of this case, the power to Mr. Hawn was well executed.

It is further insisted, that although the power given to Mr. Hawn may be valid, it was not executed by him in conformity to to the act. The 10th section of the act, authorizes the bank commissioners, "or any agent or attorney appointed by them," to make the certificate previously required to be made by the president of the bank, that a debt sued for by motion, was the property of the bank.

Considering the nature of the act to be performed, a mere allegation of the existence of a fact, which is to be taken as true only *prima facie*, and the whole effect of which is a slight modification of the remedy, we are by no means certain, that the agent may not make the certificate in his own name. But it by no means follows, that he may not also act in the name of his principal. The terms "attorney," and agent, *ex vi termini* import a delegation of power from another, and by the established principles of law, all acts done under a delegated power, must be in the name of the principal. The employment of these terms, with the import of which the legislature were doubtless familiar, certainly authorized the agent when appointed, to act in the name of his principal; and if the language of the act is broad enough to justify him in making the certificate in his own name, it would only prove, that the legislature in its anxiety to provide for the exigency, gave the power in the alternative, to

be exercised in either mode, as might be considered most advisable.

The question whether Mr. Hawn signed the certificate, is not made upon the record. The plaintiff produced the power of attorney from the commissioners to Hawn, and then produced and offered to read his certificate that the note was *bona fide* the property of the bank. The defendant "objected to the reading of this paper as sufficient for that purpose," the plain import of which is, a denial of the efficacy of such a certificate, to give the court jurisdiction to proceed in that mode. If the objection had been, that there was no proof that such a certificate had been made, it should have been, and doubtless would have been so stated. We are therefore relieved from the necessity of entering upon the inquiry, whether such proof is necessary.

Let the judgment be affirmed.