## CARRIERE vs. TICKNOR.

26 571
95 593

1. Defendant, being indebted to plaintiff by open account for goods sold and delivered, gave him a note for a larger amount on a third person, and agreed to take up the difference in goods at cash value as he might want them, and received part of the goods the next day; but plaintiff, discovering a few days afterwards that the maker of the note was insolvent, thereupon tendered back the note, and demanded a rescission of the contract, and then brought suit on the account for goods sold, &c.; to which defendant pleaded payment and set-off: *Held*, that if plaintiff received the note in payment of the account, without any fraud or misrepresentation on the part of defendant to induce him so to take it, then the delivery of the note operated a payment and extinguishment of the account, and plaintiff became bound to defendant for goods at cash value to the amount of the difference between the note and account; but that this liability for goods, coupled with the disaffirmance of the contract on the part of plaintiff, could not be used as a set-off in this suit, so as to entitle defendant to judgment for the difference between the note and account.

APPEAL from the City Court of Mobile.

Tried before the Hon. ALEX. McKINSTRY.

ACTION on an open account for goods sold and delivered, by Antoine Carriere against John Ticknor, amounting to $188 40, with interest thereon from 5th April, 1853; pleas, payment and set-off.

The plaintiff's bill of exceptions shows these facts :—

" It was proved on the trial, that defendant was indebted to plaintiff, on the first day of March, 1853, in the sum of $135 15, and that plaintiff's agent called on him for payment on the 7th March, when defendant proposed to give in payment a note of D. Sands for $335", payable to his own order, at the office of the defendant, " and proposed to take the balance in goods from plaintiff as he (defendant) might want them. There was evidence tending to show that defendant at the time represented the note to be good, and that he refused to endorse it, saying that his endorsement would make it no better ; and there was evidence, also, tending to show that he had only stated at the time that plaintiff's agent knew as much about Sands as he did, and that plaintiff's agent took the note supposing it to be good. The defendant's proposition was first made to the clerk of plaintiff's agent, in de-

fendant's office; that clerk took the note, and went to see plaintiff's agent, and in the course of half an hour he returned, and said that he would prefer defendant's endorsing the note, which was declined; and the clerk then accepted the proposition, and received the note in payment of the account. Plaintiff's agent took the note in payment of the account against the defendant, and upon an agreement that defendant should take out in goods, at cash value, as he might want them, the difference between the note and account; and on the next day the defendant sent and got from plaintiff $53 25 worth of goods on account of that difference. On the morning of 10th March, plaintiff's agent ascertained that Sands was insolvent, and had been so at the time he took the note, and for some months previous thereto; that he had suddenly left for California on the 5th March, without saying anything to his creditors, or even to his confidential clerk; and that his store had been shut up by the sheriff on the 9th March, and was then in the sheriff's hands under attachment process. Plaintiff's agent then immediately returned said note to defendant, and left it with him, notifying him that he considered the contract null and void. Defendant refused to have anything more to do with the note, which was left on his desk; and he subsequently sent it to the office of plaintiff's agent, who refused to receive it, and defendant's agent then laid it on a box in plaintiff's agent's store, where one of plaintiff's clerks found it, and took care of it until the trial, when it was produced by him, and placed among the papers in the cause for the benefit of whom it might concern; both plaintiff and defendant refusing to claim it, or to have anything to do with it. It was in evidence, also, that before the 7th March, 1853, all of said Sands' property was mortgaged for more than its value, by mortgages spread upon the records of Mobile county, where his property was situated; that he owed large debts besides, and was largely insolvent prior to the 5th March, 1853. There was evidence, also, tending to show that defendant had frequently before had notes on Sands for collection, which had always been promptly paid at maturity.

"There was no other evidence before the jury; and thereupon the plaintiff asked the court to charge as follows:—

"1. Unless the jury believe from the evidence that the note

Carriere v. Ticknor.

of Sands was the property of the defendant at the time this suit was brought, they cannot find defendant entitled to set it off against plaintiff's demand.

"2. If defendant was indebted to plaintiff for goods sold, and gave the note of an insolvent person, and it was received by plaintiff in payment of that indebtedness, and plaintiff ascertained, in a reasonable time afterwards, the insolvency of the maker of the note, and thereupon immediately returned the note to defendant,—then plaintiff is entitled to sue defendant on the original claim for goods sold, if the note is now in defendant's possession, or where he can get it.

"3. If defendant was indebted to plaintiff in the amount claimed, then that indebtedness would not be destroyed by plaintiff's agent's receiving the note of Sands, unless the note was received with the understanding that plaintiff was to look only to the note for payment, and was to take the risk of its being paid.

"4. If the jury believe that there was any material misrepresentation on the part of Ticknor to induce plaintiff, or his agent, to take the note of Sands in payment of the account, then the taking of said note would not prevent plaintiff from suing defendant upon the original claim.

"5. If the jury believe that Sands was insolvent at the time defendant gave said note to plaintiff's agent, then defendant cannot, under any circumstances, claim from plaintiff any judgment against him for a moneyed demand—the outside he could claim would be, that plaintiff's claim was paid.

"6. If the jury believe that the defendant was aware of the insolvency of Sands at the time of his paying said note to plaintiff's agent, and that plaintiff's agent was not aware of said insolvency of Sands at the time, then the fact of plaintiff's having received said note from defendant would constitute no bar to his suing on the original debt.

"7. That the doctrine of set-off only applies, where each party has, at the commencement of the suit, a good cause of action against the other.

"8. That if plaintiff, at the time this suit was commenced, had no subsisting claim against defendant, then defendant could not claim anything against plaintiff by virtue of the doctrine of set-off.

" 9. If the jury believe that defendant used any fraudulent misrepresentation, in order to induce plaintiff, or his agent, to take said note, then the taking of said note furnishes no defence to plaintiff's action, and he is entitled to recover notwithstanding the taking of the note.

" The court gave the first, third, fourth, and ninth of these charges, and refused to give the others; and to each refusal the plaintiff excepted. The court, in its main charge, among other things, charged the jury, that although they might believe that Sands was insolvent at the time the note was given by defendant to plaintiff, yet, if plaintiff agreed to receive it in payment of his account, he would be bound by his agreement, and would be debarred from suing on his original cause of action, unless defendant used some fraud, or material misrepresentation, or unless he knew that Sands was insolvent, and concealed that fact from plaintiff, or his agent, to induce him to take the note; and to this charge plaintiff excepted."

The jury returned a verdict for the defendant, for the amount of the difference between the account and note, and thereupon the court rendered judgment accordingly.

The charge given, and the refusals to charge as requested, are now assigned for error.

P. HAMILTON, for the appellant :

1. The receipt by a creditor of a promissory note, or bill of exchange, in discharge of an open account, is not a payment of the debt, unless it is expressly so received : the mere receipt of such security, *ipso facto*, does not work a payment. 12 How. 225 ; 10 Peters 534 ; 3 Denio 410 ; 5 Barb. S. C. R. 398-408 ; 8 Conn. 472 ; 10 Ala. 766 ; 15 *ib*. 393. And even if a receipt be given, acknowledging the note to be in payment of the account, it is not conclusive that the note was taken in extinguishment of the debt.—2 Gill & J. 493. So the mere receipt of a third person's note will not extinguish the original debt, except upon an express understanding to that effect.—7 Term R. 64 ; 6 *ib*. 52. The risk of payment, and of the maker's solvency, is on the party paying.—1 Stra. 415 ; 2 *ib*. 1248 ; 1 Esp. Cas. 3 ; 15 Mass. 75-80 ; 6 *ib*. 182-6 ; 15 N. H. 332 ; 5 *ib*. 410 ; 2 Nott & McC. 102 ; 1 Cow. 383-5 ; Story on Bills of Exchange, § 225. This is the rule with

Carriere v. Ticknor.

respect to bank-notes paid out—the risk of their genuineness, and of their solvency, is on the party paying them.—Story on Bills, *supra;* 11 Wend. 9 ; 13 *ib.* 101 ; 4 Verm. 555 ; 11 *ib.* 516, 576 ; 6 Hill (N. Y.) 340 ; 2 Johns. 455. The reason of this rule is the same in each case, and the doctrine rests on sound sense : the creditor contracted to receive value, and received only waste paper. This proposition the court below denied, and put the case solely on the ground of fraud in Ticknor.

2. If the above be true, it is clear, that the ruling of the court on the question of set-off, and the judgment against plaintiff for the nominal surplus of the note, were wrong. Even if plaintiff were bound by taking the note in the manner he did, it could only operate as a payment of his claim. He no longer had a demand against defendant ; and without a subsisting demand in favor of the plaintiff, there is no room for the assertion of a set-off.—3 Har. (15 Penn.) R. 225. If the plea of payment is true, the plea of set-off cannot be maintained. Defendant's remedy, if he had any, lies in an independent suit against plaintiff. It was not a money demand, but a claim for goods to be delivered, and was not proper for a set-off.—Hutchinson v. Reid, 3 Camp. 329 ; 10 N. H. 445 ; Babington on Set-off, (6 Law Lib.) m. p. 9.

R. H. SMITH, *contra.* [No brief on file.]

CHILTON, C. J.—If no fraud, or misrepresentation of any kind, was used by the defendant, or his agents, to induce the plaintiff to take the note on Sands for $335, *in payment of the account for goods, &c., sold,* and the plaintiff *did in fact receive the note in payment,*—the defendant refusing to endorse the same, and the plaintiff agreeing to allow the defendant " to take out, in goods at cash value, as he might want them, the difference between the amount of the account and the amount of the note,"—then it is clear, by the terms of the contract, the account was paid by delivering the note, and the plaintiff became bound to the defendant to allow him to take up goods, at cash value, to the amount of the difference between the note and account. But we are unable to perceive how this undertaking, to pay the difference in goods at cash

value, as the defendant might want them, can be made a set-off in this cause. The proof did not *tend* to establish a set-off, but a *payment*. The account was paid, and extinguished, and there was no legal liability to pay the difference in money. The contract was valid, or it was not. If valid, it amounted to a payment of the account sued on, and a liability was created to pay the remainder in goods, at cash value, as defendant might want them, a portion of which goods the defendant has already received ; if invalid, the plaintiff was entitled to his suit upon the account, as though the note on Sands had never been transferred to him.

In our opinion, the disaffirmance of the contract on the part of the plaintiff, by bringing his suit after tendering back the note, did not so affect the nature of the contract, as to change a payment into a set-off, and entitle the defendant to recover for the amount of the note as upon a moneyed demand. This was, in substance, the effect of the fifth charge, which denied the right of the defendant, under the proof in this case, to recover over against the plaintiff on account of the transfer of the note. The charge must be referred to the proof, all of which is set out in the bill of exceptions ; and as it did not *tend* to prove a set-off, the fifth charge was proper. The utmost the defendant can claim is, a verdict and judgment on his plea of payment.

For the error in refusing the fifth charge, thereby conceding there might be a set-off under the proof,—which opinion was carried out by the court in rendering the judgment over against the plaintiff,—the said judgment must be reversed; and the cause remanded.