## WILLIAMS vs. MITCHELL'S ADM'R.

[BILL IN EQUITY BY PURCHASER, FOR REFORMATION OF DEED, ABATEMENT OF PURCHASE-MONEY, AND INJUNCTION OF ACTION AT LAW.]

1. *Competency of surety as witness for principal.*—Where the principal alone files a bill in equity, to enjoin an action at law against himself and his surety, he may render the surety a competent witness for him, by paying all costs of the action at law, and depositing with the surety a sum of money sufficient to cover any liability in that action.

2. *When mistake is no ground for equitable relief.*—If a portion of the land sold is, by mistake, omitted from the deed, such mistake furnishes no ground for equitable relief against an action at law on the notes for the purchase-money, when it appears that the purchaser was put in possession of the entire tract sold, and has retained it undisturbed.

3. *When fraud is no ground for equitable relief.*—When the price of a chattel is, by agreement, included in notes given for the purchase-money of a tract of land, although the two sales are entirely distinct transactions, a fraud in the sale of the chattel is available as a defense at law against an action on the note, and, consequently, constitutes no ground for equitable relief.

4. *Secondary evidence of title-bond.*—After the execution of a deed by the vendor, his title-bond is presumed to have been given up and destroyed; consequently, secondary evidence of its contents is then admissible for the purchaser, although none of the witnesses recollect what became of it.

5. *Reformation and cancellation of deed.*—After the death of the vendor, leaving infant heirs, the purchaser may come into equity, to have his deed reformed and canceled, as to a tract of land to which the vendor had no title, and which was included in the deed by mistake.

6. *Abatement of purchase-money as incidental to reformation and cancellation of deed.* Where the jurisdiction of equity has attached, on bill filed by a purchaser, for the purpose of reforming and partially canceling his deed, the court may also, as incidental to this ground of relief, allow an abatement of the purchase-money, on account of the vendor's misrepresentations respecting the location of the boundary lines.

7. *When equity will grant partial relief without settling all equities between the parties.* Where the vendor's deed omits, by mistake, a portion of the land which he intended to convey, and of which the purchaser has retained the uninterrupted possession; and, by a similar mistake, includes another tract to which he had no title whatever, the chancery court may, without settling all the equities between the parties growing out of the transaction, take jurisdiction, at the instance of the purchaser, to reform and partially cancel the deed, and make an abatement of the purchase-money, on account of the vendor's misrepresentations respecting the location of the boundary lines.

8. *Parties to bill for reformation of deed.*—The heirs-at-law of the vendor are not necessary parties to a bill, filed by the purchaser against his administrator, for a reformation and partial cancellation of the deed, as to a tract of land to which the vendor had no title, and which was included in the deed by mistake.

9. *What relief defendant may obtain without cross-bill.*—On bill being filed by a purchaser against the personal representative of his deceased vendor, seeking a reformation and partial cancellation of his deed, as to a tract of land to which the vendor had no title, and an abatement of the purchase-money,—although the defendant can obtain no active relief without a cross-bill, he may nevertheless insist that the complainant shall be required to do equity, by accounting for another tract, which was omitted from the deed by mistake, but of which the purchaser has retained the undisturbed possession ; and this, notwithstanding the frame and prayer of the bill prevent the complainant from obtaining any relief as to that tract.

APPEAL from the Chancery Court of Marengo.

Heard before the Hon. WADE KEYES.

THE original bill in this case was filed by Caleb Williams against the administrator of Henry B. Mitchell, deceased, to obtain an abatement of the purchase-money for a certain tract of land sold by said Mitchell to Williams, on account of the vendor's fraudulent misrepresentations respecting the quantity and quality of the land, and the location of the boundary lines ; and to enjoin an action at law, on the notes given for the purchase-money, against said Caleb Williams, and Jacob B. Williams, his surety. An amended bill was afterwards filed, praying a rescission of the contract, and general relief. In one of the notes for the purchase-money of the land was included $75, the price of a spinning-jenny, which, as the bill alleged, was in one of the houses on the land at the time it passed into the complainant's possession, and was represented by Mitchell to have been already sold to one Robinson, at the price of $100 ; and this sum was included in the notes, at the request of Mitchell, and on his statement that Robinson would pay $100 when he called for the spinning-jenny; but Robinson, after getting it, refused to pay anything for it, because it was not as new or valuable as Mitchell had represented it to be.

The administrator answered the bill, admitting the sale, the execution of the notes for the purchase-money, and the institution of the action at law upon them; denying the charges of fraud and misrepresentation, and calling for proof; admitting that a portion of the tract intended to be sold was omitted from the deed, and that

another small tract, to which his intestate had no title, was included in the deed; and insisting that this was the result of an innocent mistake.

After paying the costs of the action at law, and depositing with his co-defendant a sum of money sufficient to cover any liability in that action, the complainant examined said Jacob B. Williams as a witness. The defendant moved to suppress the deposition of this witness, on the ground of interest; but the decision of the chancellor rendered it unnecessary to pass on the motion, which is now here renewed.

Other questions as to the admissibility of evidence arose in the court below, which, so far as they are material, will be readily understood from the opinion of the court.

At the final hearing, on pleadings and proof, the complainant having abandoned his prayer for a rescission of the contract, and declining to amend his bill, at the chancellor's suggestion, by making the widow and heirs-at-law of said Henry B. Mitchell parties, the chancellor dismissed the bill, without prejudice, on the ground that all the equities between the parties could not be settled under it; and his decree is now assigned as error.

WM. M. BROOKS, with whom was WM. M. BYRD, for the appellant.

A. R. MANNING, contra.

STONE, J.—In the Manchester Iron Manufacturing Co. v. Sweeting, a material witness became interested in the transaction, by becoming surety for the party in whose favor his testimony was desired to be used. It was held, that the party who had an interest in his testimony, might restore his competency, by depositing in his hands a sum of money sufficient to indemnify him; the witness releasing the party from all claims on account of his suretyship. 10 Wendell, 162.

In Ball v. The State Bank, 8 Ala. 596–7, this court cited numerous authorities to the same effect as that last cited, and added, "In some of the cases, the money was placed

in the hands of the party offered as a witness. This was clearly sufficient to neutralize the interest which would otherwise have rendered him incompetent."

The difference between the cases cited and the one at bar, on the motion to suppress the deposition of Jacob B. Williams, is this : In those cases, the witness was not sued, and hence the testimony did not bear directly on a suit, to which he was a party. In this case, although the witness is not a party to the chancery suit, yet that chancery suit is nothing more or less than one means of defending the common-law suit ; and, if successful, the result will be, that the action at law will be enjoined, either in whole or in part. I am unable to perceive a substantial difference, in principle, between testifying in the common-law suit, to which the witness is a party, and testifying in the chancery suit, whose only object is a defence of the common-law suit.—See Colgin v. State Bank, 11 Ala. 222.

I admit there are cases, where one defendant in a judgment at law may file a bill to obtain the benefit of a defense *personal* to himself, and under such bill may use his co-defendant's testimony. In these cases, however, the interests of the testifying party are not affected, or proposed to be affected, by the chancery proceeding.—Jordan v. Loftin, 13 Ala. 547 ; Miller v. McCan, 7 Paige, 451 ; Savage v. Todd, 9 Paige, 578 ; Norton v. Woods, 5 Paige, 249.

My brothers, however, think that as Jacob B. Williams, the witness, is not a party to this chancery suit, and as he is fully indemnified by the deposit of money with him, and by the payment of the costs at law, he is a competent witness for the complainant. In further support of their view, see Willings v. Consequa, 1 Pet. C. C. R. 301 ; Cow. & Hill's notes to Phil. Ev. (3d ed.) part 1, pp. 44, *et seq.* ; Calloway v. McElroy, 3 Ala. 408 ; Montandon v. Deas, 14 Ala. 33 ; Crawford v. Barkley, 18 Ala. 270.

In Calloway v. McElroy, *supra*, it was urged, that the bill contained no equity, because it showed on its face, first, that the vendor, in answer to interrogatories propounded under the statute for discovery, had denied the fraud ; and second, that the only witnesses who could establish the

fraud, were interested in the suit, being sureties for the purchase-money. In reply to this last objection, this court said, "It may be that other evidence can be procured; or, if the interest of the witnesses cannot be otherwise removed, it certainly can by payment of the notes signed by them, without impairing the complainant's right to relief."

The case does not inform us, and I am unable to perceive, how the complainant could have paid off the notes, and then, in that suit, have obtained the benefit of the testimony of his sureties. To justify the application of the testimony to this new phase of the case, a supplemental bill would have been necessary; and *quære*, would not such change of the averments of the bill make a new case?—Larkins v. Biddle, 21 Ala. 252.

I yield, however, to the opinion of the majority of the court.

The record shows that, at the time complainant purchased the tract of land in controversy, Mitchell, his vendor, had the fee-simple title to the west half of the north-west quarter of section twenty-three, and the west half of the north-west quarter of section twenty-six, described in the pleadings. The record does not inform us that he has ever parted with his title to these lands, or set up any claim to them since he sold to complainant. Mr. Williams has had the undisturbed possession of them, ever since his purchase. It is clear that these portions of the tract of land were left out of the deed by mistake; and that, by a like mistake, the west half of the north-west quarter of section twenty-one was inserted in the deed. By a proper bill, making the heirs of Mitchell parties, if the testimony should be the same as in this record, the deed in the above respects can be reformed, and the title to the two eighties in sections twenty-three and twenty-six vested in complainant. As to these portions, the present record shows no valid claim to relief.—See Lang v. Brown, 4 Ala. 622; Evans v. Bolling, 5 Ala. 550; Beck v. Simmons & Kornegay, 7 Ala. 71; Pierce v. Brasfield, 9 Ala. 573.

Neither can the complainant, under the bill in this case, obtain any relief in reference to the spinning-jenny. The averments in the bill, in reference to it, make a case for defense at law; and the fact that the purchase-money was, for convenience, included in the note given for the land, cannot vary the case. The bill fails to connect the spinning-jenny with the land transaction, and it must stand as any other purchase of a chattel, in which the purchaser believes himself defrauded. We will not say that the bill, in this particular, would contain no equity, if it had averred that Jacob B. Williams, the surety to the note, was the only witness by whom the fraud could be proved. The bill contains no such averment.—See Jordan v. Loftin, *supra.*

A question has been made upon the admissibility of the evidence which speaks of the bond for title. The objection is, that the bond itself is the best evidence, and that no sufficient predicate has been laid for the introduction of secondary evidence. When the deed was executed, the presumption is, that the bond for title was given up; and being no longer of any apparent value, that it was then destroyed. The fact that none of the witnesses remember anything in regard to the bond, is not enough to overturn that presumption.

Having thus settled the competency of the witness Jacob B. Williams, and pointed out certain features of the bill on which the complainant can obtain no relief on the present record, we will now address ourselves to the remaining feature of the bill. The bill charges, that complainant purchased of Mr. Mitchell his tract of land, containing between twelve and thirteen hundred acres, at $6 per acre; that pending the negotiation, Mitchell pointed out, as peculiarly valuable, and belonging to the tract, the west half of the north-west quarter of section 26, the west half of the south-west quarter of section 23, the west half of the north-west quarter of section 23, about 25 acres of the eastern part of the east half of the north-east quarter of section 16, and about 25 or 30 acres lying immediately north of the west half of the north-west quarter of section 15, embracing all the land between

that and the Tombeckbee river, being a portion of the south fraction of fractional section 10, all in township seventeen, range one, east; that the west half of the north-west quarter of section 26, and the south-west quarter of the south-west quarter of section 23, were rich swamp land; that the north-west quarter of the south-west quarter of section 23, and the west half of the north-west quarter of section 23, were also good upland, and possessed many advantages; that the portions of the land in sections 16 and 10, as pointed out, were greatly valuable, as affording a convenient outlet to the river. The bill charges that most of the lands pointed out were included within Mr. Mitchell's fences. No particular part is described as being outside of the fences, except a part of the 25 or 30 acres alleged to be in fractional section 10. We do not think that any misdescriptions, extending beyond the enclosure, except that in section 10, are sufficiently claimed and described to justify relief. Hence, in all other respects, we will limit our inquiries to the enclosed lands. The averments in relation to fractional section 10, open a wider field of inquiry. As we have shown above that the west half of the north-west quarter of section 26, and the west half of the north-west quarter of section 23, were, at the time of the contract, the property of Mr. Mitchell, and were left out of the deed by mistake, we dismiss all further inquiry as to them. There was issue joined on every material averment of the bill, as stated above, and it is necessary that we should determine to what extent the above averments are proved.

The witnesses, William Williams and G. Mann, in their testimony, betray a want of caution, which renders it unsafe to adopt the statements of either as a very reliable guide. Jacob B. Williams was evidently more intelligent than they were; and as we discover in his deposition greater evidences of circumspection, we feel it our duty to award to it the greater weight. There is not, however, on the points necessary to be decided, any material discrepancy between William and Jacob B. Williams. Mr. Mann is at issue with them, at each of the material points. His testimony, however, is overcome by

theirs; and, on the points of misdescription above referred to, we are governed by them, so far as they keep within the averments of the bill. We regard, then, the following propositions as established by the proof: 1. That Mr. Mitchell pointed out as his own, and sold to complainant, that part of the west half of the south-west quarter of section 23, township 10, range 1, which was at the time enclosed by his farm. 2. That he also pointed out as his own, and sold, that part of section 16 which was within his enclosure. (The recovery as to this item must be limited to the 25 acres claimed by the bill.) 3. That he also pointed out as his own, and sold, a small portion of the west end of fractional section 10, which is covered by the turnip-patch and horse-lot.

We need not in this case consider whether the bill would be maintained, if it simply rested on the naked proposition of a claim either to recover or recoup the damages, for a false representation by the vendor that the land he was selling contained certain fertile lands, which the proof shows were not within it. In such case, there is a remedy at law.—Munroe v. Pritchett, 16 Ala. 785. Whether chancery will also entertain jurisdiction, concurrently with the court of law, we do not now determine. In thus declining to base the jurisdiction on the misrepresentations of Mr. Mitchell, we do not wish to be understood as asserting that the misrepresentations are not proved. We have shown above that this charge is sustained by the proof to the extent there stated. Neither is it necessary, under our decisions, to inquire whether the misrepresentations were knowingly made. If it were, perhaps this requisition is complied with in the testimony of Mr. Foscue. This view renders it unnecessary to inquire whether the same rule obtains in this State, as is announced in Glasscott v. Lang, 2 Price, 310; Eyre v. Potter, 15 How. S. C. 42.

There are in this case, however, other undisputed grounds on which to rest the jurisdiction. The amended bill avers, that one eighty acre tract conveyed by the deed, viz., the west half of the north-west quarter of section 21, was, at the time of the sale, the property of another, and

that to it Mr. Mitchell had no claim whatever. The prayer of the amended bill was, that the contract should be rescinded, and the deed canceled. The answer does not deny, but admits, that Mr. Mitchell did not own the said west half of the north-west quarter of section 21; and insists that it was inserted in the deed by mistake. Coming to the conclusion, as we do, that the above statement in the answer is correct, the complainant's abandonment of the prayer for rescission, does not render unnecessary or inoperative the prayer that the deed be, at least *pro tanto*, vacated. Only the chancery court can reform or annul the deed, so far as it conveys said eighty acre tract; and on this ground, the jurisdiction of the court can be upheld. The damages, if any have resulted from the misrepresentation of the boundaries, can be redressed, as an incident to the above stated clear ground of equity jurisdiction.— See Russell v. Little, 28 Ala, 160; Stow v. Bozeman, 29 Ala. 397.

If Mr. Mitchell, the vendor, were in life, and willing to correct the deed in this particular, perhaps this prop would be taken from under the bill. He, however, is dead; his heirs are minors of tender years; and there is no person in being, who has the power to correct the deed, by voluntary agreement with complainant.

The ground on which the chancellor dismissed the bill, cannot be sustained. This is not, strictly, a splitting up of equities. We will not say that, under a proper bill, making the heirs-at-law and personal representative parties, chancery would not entertain the case, and do complete justice between all the parties. It does not follow from this, that the complainant was, in this case, bound to pursue that course. The death of Mr. Mitchell has, at least, had the effect of so far severing the interests, as to give two distinct rights of action, where, before that event, there may have been but one. The question of damages, as considered above, is one exclusively against the personal representative, in which the heirs have no direct or immediate interest. It was not necessary to bring them before the court, to procure the partial cancellation of the deed; because, first, no relief as to that

eighty was sought, which could affect them injuriously; and, secondly, their ancestor, at the time he conveyed, having no title, a canceling of the deed *pro tanto* cannot vest the title in them. The right to reform the deed as to the two eighties in sections 23 and 26, described above, is one in which the heirs of Mitchell are directly interested. In this the personal representative has no interest whatever.

As this was a purchase of land at so much per acre, the question of quantity, as secured to the purchaser under the contract, necessarily arises. We must, then, determine the number of acres for which complainant has paid and given his notes, as well as the number of acres he has acquired and can acquire, under the averments and proof shown in this record. If he has acquired, and can acquire under his contract, *less* than the money he has paid and the notes he has given entitle him to, he is entitled to a credit for the deficiency; if *more*, he must be charged with the excess. In ascertaining the quantity of land in this proceeding, complainant must be credited with the west half of the north-west quarter of section 21. He must be debited with the west half of the north-west quarter of section 23, and the west half of the north-west quarter of section 26. If the enhanced value of the tract, caused by the addition of these two half quarters, swell his liability above the amount he may recover on account of the misrepresentations of his vendor as to the other portions of the tract, he must only be debited with a sum sufficient to set off the discount he may obtain for such misrepresentation. We thus limit complainant's liability, because there is in this case no cross-bill. Defendant can, in this state of the record, obtain no active relief. The utmost claim he can assert is, that complainant, as a condition to the relief he prays, shall be required to do equity; and if, in balancing the account, he is chargeable with a sum equal in amount to the relief he is entitled to, that he shall take nothing by his bill.

To the two pieces last above described, it will be remembered, he has no title. The proof in this record shows he can obtain one. If it be objected that, when

he seeks to obtain the title to them from the heirs of Mitchell, different proof may be made, and he may fail in his suit, the answer is, that he has himself elected to go to trial on a part of the wrongs he complains of; and he must submit to their decision upon the equities as the testimony now discloses them. The difficulty could probably have been obviated, by improving the privilege of amendment tendered by the chancellor.

The descriptions of the land found in the deed exhibited, are not very accurately expressed. From them, however, we think the real quantity conveyed may be gathered. One half quarter is twice described. The quantity of another, however, is not stated. Thus—"The west half of the north-east quarter, the east half of the south-east quarter, containing seventy-nine 20-100 acres." This neutralizes the error above noted. Deducting the twelve acres conveyed to John Jordan, the lands described in the deed amount to about 1,260 acres. Subtracting the half quarter inserted by mistake, and adding the two half quarters omitted by mistake, there will remain about 1,339 acres. The deed sums up the quantity at 1,278 acres. This, we suppose, is the true number of acres for which complainant paid and gave his notes. The record furnishes us no other data, and hence we assume this to be correct. It will thus be seen, that Mr. Williams obtained 61 acres of lands more than he has accounted for; and with it he must be charged.

In taking the account, the registrar must ascertain the average value, per acre, at the time of the sale, of the tract of land conveyed, excluding the west half of the north-west quarter of section 21, and including the west half of the north-west quarter of section 23, and the west half of the north-west quarter of section 26. He will then ascertain the average value per acre of the tract as it would have been, if it had contained those portions of the west half of the south-west quarter of section 23, and the east half of the north-east quarter of section 16, and the small portion of fractional section 10 above indicated. If this last result exceed the average assessment of the tract intended to be conveyed, complainant is entitled to a credit

for the sum shown by the difference, with interest corresponding with the terms of the contract.

As the labor of Mr. Mitchell rendered tillable the portions of the west half of the south-west quarter of section 23, and the east half of the north-east quarter of section 16, which are included within the farm; and as Mr. Williams went into possession of those lands under his contract,—he must be charged with reasonable rent for them, for the time he occupied them, and is entitled to a discount for reasonable repairs, if he has made any.

The decree of the chancellor, dismissing the complainant's bill, is reversed, and a decree here rendered, 1st. vacating, annulling, and rendering inoperative, the deed of said Henry B. Mitchell to Caleb Williams, so far as it sells and conveys the west half of the north-west quarter of section 21, township 17, and range 1, east. 2d. It is referred to the registrar, as master, to take and state an account between the parties, on the principles above expressed. On such reference, he will consider the proofs on file, and such other legal evidence as the parties may respectively offer; and he is directed to report to the next term of the chancery court for the fifth district. 3d. The injunction heretofore granted in this cause is continued in force until the further order of the chancellor. And it is further ordered, that the appellee, Prince, pay the costs of this appeal, incurred in this court and in the court below, to be levied of the estate and effects of the said Henry B. Mitchell in his hands to be administered. The costs of the court below are reserved till the coming in of the report.

This opinion takes effect as of January 21st, 1856, the day on which the cause was submitted.