# Day *v.* Thompson.

*Action on Bank Check, against Indorser; and on Common Counts.*

1. *Giving bill or note for antecedent debt; when operates as payment.*—By the general commercial law, both in England and the United States, a negotiable bill or note, when given for an antecedent debt, is presumed to be intended only as collateral or additional security, and does not discharge the debt, unless intended and accepted as an absolute payment.

2. *Bank check; when operates as payment or merger.*—Where the debtor proposed, by letter, to remit a draft on New York, "in payment of bill in full"; and his offer was accepted by the creditor, who acknowledged the receipt of the draft in full payment of the account; *held*, that the creditor could not afterwards maintain an action on the account, his only remedy against the debtor being on the indorsement of the draft; though the rule would be different in a case of forgery, fraud, or misrepresentation.

3. *Same; subsequent insolvency of bank.*—The bank, whose draft or check was thus remitted by the debtor, being at the time in good financial standing and repute, its subsequent insolvency, though occurring only a few days afterwards, does not vitiate the payment, the good faith of the debtor in the transaction not being impugned.

4. *Indorsement of commercial paper; admissibility of parol evidence to vary.*—The contract evidenced by a regular indorsement of a bill or note is fixed and defined by law, and parol evidence can not be received to change or modify it; and although there are recognized exceptions to this general rule, and some conflict in the cases applying these exceptions, the court is not willing to extend them, to the manifest impairment of the value of commercial paper, and the infringement of a salutary rule of evidence.

APPEAL from the Circuit Court of Barbour.

Tried before the Hon. H. D. CLAYTON.

This action was brought by Franklin O. Day, "doing business under the firm name of Derby & Day," against William N. Thompson; and was commenced on the 7th

[Day v. Thompson.]

April, 1879. The complaint contained the common counts on an account stated, and for goods sold and delivered ; and also a special count on the defendant's indorsement of a "bill of exchange for $200, drawn by A. A. Walker, cashier, on the 8th day of January, 1879, upon the Bank of New York, in the city and State of New York, to the order of defendant, and by him indorsed to plaintiff"; protest for non-payment, and notice thereof to defendant, being averred. The defendant pleaded the general issue, and also a special plea, alleging, in substance, that on the 8th January, 1879, being indebted to plaintiff in the sum of $200, he was instructed by plaintiff to remit the amount by draft or exchange on New York ; that he purchased the draft described in the complaint, pursuant to these instructions, and remitted it to plaintiff in payment of said indebtedness ; that he indorsed said draft "for the sole purpose of enabling plaintiff to collect it, and intending only by his indorsement to pass the right and property in said check to plaintiff in payment of said indebtedness," and that said draft "was received by plaintiff in full of said indebtedness." The plaintiff demurred to this special plea, "because the facts therein alleged, if proved, would change the legal effect of the indorsement." The court overruled the demurrer, and the plaintiff then joined issue on both of said pleas.

On the trial, as the bill of exceptions states, the plaintiff offered in evidence "the bill of exchange sued on in this case," which was a draft or check for $200, dated the 8th January, 1879, drawn by A. A. Walker, cashier (of the People's Bank), at Eufaula, on the Bank of New York, payable to the order of W. N. Thompson, the defendant, and by him indorsed to the plaintiff, thus : "Pay to the order of Mess. Derby & Day, St. Louis, Mo.," to which he signed his name : and he also offered in evidence the certificate of protest for non-payment, and a letter written by him to defendant notifying him of the non-payment and protest. The defendant then testified, as a witness for himself, "that he owed plaintiff for some goods received by him from plaintiff, and agreed to pay him $200 for what he owed ; that plaintiff agreed to accept said $200, and wrote to him, in reply to a letter from defendant to him, to send the $200 in New York exchange" ; and the letters were produced and read. The "goods" referred to consisted of several barrels of whiskey, which the defendant had ordered through an agent of plaintiff's house, and which, as he complained, did not arrive in proper time, whereby his sales were injured. In defendant's first letter, dated December 26, 1878, he said : "I feel under no obligation to take the whiskey ; but, if it

should come up to representations and sample, I will remit you draft on New York for $200, in payment of bill in full, or you can draw on me at sight for that amount; or I will hold the whiskey, when it comes to hand, subject to your order." To this letter plaintiff replied, under date January 3d, 1879: "Now, as to your proposition to pay us $200 for our bill: the goods were sold to you at very low prices, quality considered, and if it was not that we recognize the fact that you lost the sale of them for the holidays, though, as stated above, we do not consider ourselves to blame for that, we would not consent to take a cent off the bill; yet, under the circumstances, we will accept your proposition, and will thank you to remit us $200 in New York exchange, on receipt of this letter." The draft was forwarded in a letter dated January 7th, 1879, in which these words are used: "You will please find inclosed draft on New York for $200, for which send me a receipt in full for the amount of your bill." To this letter plaintiff replied, January 11th, 1879: "Acknowledging receipt of your favor of 7th inst., inclosing draft for $200 in full of our invoice December 21st," &c. The defendant testified, also, "that when he received plaintiff's said letter, instructing him to send $200 in New York exchange, he went to the People's Bank in Eufaula, which was in good repute and standing, and purchased said draft here sued on, for which he paid $200, and had it made payable to his own order, and indorsed to plaintiff," as shown by the indorsement. "Defendant's counsel then asked him, what was his purpose in so indorsing said bill of exchange;" to which he replied, "that he only indorsed it for the purpose of transferring the title to plaintiff, and did not intend thereby to bind himself as indorser." To this question and answer, each, the plaintiff objected, "because it sought and its tendency was to change the legal effect of the indorsement"; and he reserved exceptions to the overruling of his objections, and to the admission of the evidence.

On this evidence, the court charged the jury, *ex mero motu,* "that if the defendant, in settlement of an indebtedness to plaintiff, by instructions of plaintiff, sent him the draft sued on in this case, that was an extinguishment of the indebtedness; but, if, on the contrary, the defendant did not follow the plaintiff's instructions in buying and remitting said draft, or, after he purchased it, indorsed it to plaintiff for any other purpose than merely to transfer the title to it, then plaintiff is entitled to recover: that if defendant made said indorsement for the sole purpose of transferring the title to plaintiff, and of enabling plaintiff to collect the bill or draft,

[Day v. Thompson.]

then no recovery can be had on said draft on account of said indorsement." The plaintiff excepted to this charge, "and to each part thereof," and requested the following charges, which were in writing :

" 1. If the jury believe, from the evidence, that the plaintiffs instructed defendant to send them exchange on New York, in payment of his indebtedness ; then, before defendant can discharge his liability, on the theory of compliance with instructions, he must show that he forwarded to them *exchange*, which, according to the law merchant, was negotiable, and binding on the parties thereto ; and if they believe that the defendant, acting under the said instructions, forwarded exchange that was only (?) binding on the indorser, and which was not paid at maturity, then he did not comply with instructions, and is not discharged from liability."

" 2. Unless the jury believe, from all the evidence in the case, that plaintiffs received said draft on New York in full payment of defendant's original indebtedness to them, plaintiffs are entitled to recover on their original debt against defendant."

" 3. If the jury believe, from the evidence, that the defendant owed Derby & Day $200 ; and that they instructed him to send them $200 in New York exchange ; and that defendant bought a bill of exchange on New York, payable to his own order, and indorsed it to plaintiffs, and sent it to them ; and that plaintiffs acknowledged the receipt of said bill, in full of the amount due them by the defendant ; then, they can look to such acknowledgment, and to said indorsed check, to see whether they received said paper or check in full payment, without looking to the indorser, or received it in payment, subject to his liability thereon ; and if they believe that they received it in payment looking to the liability of defendant as indorser, then plaintiffs are entitled to recover."

The court refused each of these charges, and the plaintiff excepted to their refusal ; and he now assigns their refusal as error, together with the charge given by the court, the rulings on the evidence, and the overruling of the demurrer to the special plea.

G. L. COMER, for the appellant, cited *Holt v. Moore,* 5 Ala. 521 ; *Duff v. Ivey,* 3 Stew. 140 ; *Tankersley v. Graham,* 8 Ala. 247 ; *Carleton v. Fellows, Read & Co.,* 13 Ala. 437 ; *Cowles v. Townsend,* 31 Ala. 133 ; *Clark v. Hart,* 49 Ala. 86 ; *Dorrance v. Jones,* 27 Ala. 630 ; *McCrary v. Carrington,* 35 Ala. 698 ; *Bates v. Ryland,* 6 Ala. 668 ; *Lake v. Gilchrist,* 7 Ala. 955 ; *Bradford v. Haggerty,* 11 Ala. 698.

[Day v. Thompson.]

PUGH & MERRILL, and M. B. WELLBORN, *contra,* relied on the case of *Hullum v. State Bank,* 18 Ala. 805, and authorities therein cited.

SOMERVILLE, J.—It is a well settled doctrine, in the general law commercial, both of England and the United States, that the giving of a negotiable bill or note for an antecedent debt will not operate to discharge such debt, unless it was accepted in absolute payment. *Prima facie,* it is to be considered as collateral, or additional security; but, by express agreement, it may be a satisfaction and a bar.—*Myatts & Mocre v. Bell,* 41 Ala. 222; 1 Brick. Dig. p. 257, § 501, cases cited; *Sibree v. Tripp,* 15 M. & W. 23; *The Kymball,* 3 Wall. (U. S.) 37.

The undisputed facts of this case show, we think, that there was an agreement on the part of Day to take the New York draft, sent him by Thompson, in payment of the pre-existing debt due by account. The proposition of Thompson, as made by letter, was to remit a draft on New York for $200, " in payment of bill in full;" and this was accepted by Day. When the draft was subsequently received, a letter from Day acknowledged it as being in full payment of the account. Such being the case, no action can be maintained on the original debt, but the remedy of the creditor is on the indorsement alone, as made by the payee, who is the original debtor. It would be otherwise, in a case of forgery, fraud, or misrepresentation.—*Fulford v. Johnson, Hendon & Co.,* 15 Ala. 385.

At the time of the purchase of the draft in question, the Eufaula bank, which drew it, was admitted to be in good financial standing and repute. It was sent by instruction of the creditor, and the bank became insolvent within a few days afterwards. The *bona fides* of the transaction on Thompson's part not being impugned, the fact of the bank's insolvency does not vitiate the payment.—*Lowry v. Murrell,* 9 Port. 280; *Carriere v. Ticknor,* 26 Ala. 571; *Ware v. Street,* 2 Head, 609. We think, under the circumstances, that the delivery and acceptance of the draft was a payment of the account.

The parol evidence, allowed to be introduced in the court below, to show that the defendant indorsed the bill in suit for the sole purpose of transferring the title to the plaintiff, and with no intent of rendering himself personally liable, was improperly admitted. The contract imported by the regular indorsement of a bill or note is of a fixed and definite character, and is interpreted by the law. It is legally incapable of explanation, contradiction, or modification, by parol evidence. This rule is founded on the soundest principles of reason and public policy, as well as on the weightiest

(18)

authority. The reasons for its application to commercial
paper are more cogent, if anything, than to other written
contracts. In *Tankersley v. Graham*, 8 Ala. 251, the rule was
declared by this court, in discussing its application to in-
dorsements, to be too firmly established to be now unsettled,
even if its correctness were doubted. There are cases which
hold the contrary doctrine; but the weight of authority
greatly preponderates against the admission of such evidence.
*Channers v. Vanners* (35 N. J. 517), 10 Amer. Rep. p. 256,
where the cases are arrayed; *Charles v. Denis*, 42 Wis. 56,
cited in 24 Amer. R. 383; 6 Blackf. 509; 23 Maine, 392.
Professor Parsons forcibly maintains this view of the ques-
tion, as being in entire harmony with reason as well as
authority.—2 Parsons on B. & N. 520–521.

As far back as *Goupy v. Harden*, 7 Taunt. 159, an agent,
who purchased foreign bills for his principal, and indorsed
them to him without qualification, was held liable to such
principal on his indorsement. Persons holding bills *in auter
droit* must protect themselves, in making transfers, by some
special form of words, so as to prevent personal liability.
Smith's Mer. Law, p. 291; *Charles v. Denis*, supra.

In *Rodney v. Wilson* (67 Mo. 123), 29 Amer. Rep. 499, parol
evidence was held inadmissible, to show that the payee of a
note, at the time of transferring it by indorsement, agreed to
assume payment of it unconditionally. The court say: "It
is evident that the verbal contract on which the plaintiff
relied, and the contract implied by the indorsement, are
inconsistent with each other, and can not stand together.
One is an undertaking to be bound absolutely; the other, an
undertaking to be bound conditionally. The proof of the
former has the effect of varying the latter. The rule is uni-
versal, that all prior and contemporaneous agreements are
merged in the written undertaking. . . If the indorsee
may thus qualify the legal effect of a regular blank indorse-
ment, why may not the indorser be permitted, on the other
hand, to escape all liability by showing that the indorse-
ment was without recourse."

It is not to be denied that the cases involving this question
are somewhat confused, and not entirely reconcilable. This
results from a failure to recognize with sufficient clearness
definite *exceptions* to the general rule; such as parol proof of
a failure of consideration, or some other equities between
the original parties to bills, or between the holder and an
indorsee affected with actual or constructive notice. Some
of the decisions relax the rule, also, in cases of *irregular* in-
dorsements, as this court did in the case of *Hullum v. The
State Bank*, 18 Ala. 805. This indorsement was not made in

[March v. England.]

due course of trade, nor by an original party to the bill. It was executed after the holder had acquired title, and after protest of the bill. It being doubtful, on the face of the paper, whether the indorser intended to bind himself as *guarantor or indorser*, parol testimony was admitted to correct the ambiguity.

We are not willing to enlarge the scope of these exceptions. It would tend to destroy the growing value of commercial paper, and to impair a salutary rule of evidence, which was designed to correct the proverbial infirmities of human memory, and has done much to close the flood-gates against frauds and perjuries.