# Keel *v.* Larkin.

### *Contest of Claim to Homestead Exemption.*

1. *Surety's rights, as against fraudulent and voluntary conveyances.*—A surety is a creditor, within the meaning of the statute of frauds (Code, § 2124), and entitled to protection against fraudulent and voluntary conveyances, from the time when his contingent liability was assumed, although he has no technical right of action until he has paid the debt.

2. *Exemptions; determined by what law.*—As against creditors, the right to a homestead or other exemption, its value and extent, must be determined by the law which was of force when the debt was contracted; and when the creditor is a surety, by the law which was of force when his liability was assumed.

3. *Same; renewal of debt, or change of parties.*—The mere renewal of a debt, or the novation of an old debt by a new one, does not affect the debtor's right of exemption; but, when a new liability is created, by reason of change of parties, or otherwise, and it is taken in full payment and discharge of the original debt, the right of exemption is measured by the law in force at the date of the new obligation.

4. *When note or bill operates as payment.*—The giving by a debtor of his own bill or note, though negotiable, does not operate to discharge the debt, unless it is accepted as an absolute payment; but, while it is regarded, *prima facie*, as only collateral or additional security, all the authorities concur that, by express agreement, it may be regarded as a satisfaction and a bar.

5. *Same.*—The English cases require an express agreement, unless the bills received have been negotiated, and are outstanding against the defendant; but the modern American authorities, viewing it as a ques-

[Keel v. Larkin.]

tion of intention, hold that an implied agreement, to be determined by the jury from a consideration of all the facts, may have the same effect; and this is adopted by this court as the correct rule.

6. *Lien of execution; how affected by delay or suspension.*—As against the defendant in execution, his heirs, or personal representatives, the lien of an execution is not lost or suspended by the plaintiff's direction to the sheriff to hold it up, since they can not be thereby prejudiced.

7. *Contest of claim of homestead exemption; where originated and tried.* When an execution, issued on a judgment in the Circuit Court, is received by the sheriff during the life of the defendant, but is not levied until after his death (Code, § 3213), and a homestead is thereupon claimed by the widow; the execution and claim are properly returned into the Circuit Court, where a contest of the claim may be originated and tried; and it is not proper that the contest should be originated in the Probate Court, and certified to the Circuit Court for trial.

8. *Sale of lands under execution, after defendant's death.*—When an execution is received by the sheriff during the life of the defendant, and its lien is preserved as authorized by the statute (Code, §§ 3213, 2633), lands may be sold under a levy made after his death, as if he were still alive.

9. *Claim of homestead exemption by widow; proceedings under.*—When a homestead exemption is claimed by the widow in lands on which an execution, received by the sheriff during the life of the defendant, is levied after his death, the proceedings for its allotment should be governed by section 2832 of the Code, and not by section 2841.

10. *Proof of transactions with decedent; who may testify as to.*—When a homestead exemption is claimed by the widow and infant children of the deceased defendant in execution, and their claim is contested by the plaintiff, a surety who is bound for the debt on which the judgment is founded, though not a party to the contest, is incompetent to testify to any transactions between the plaintiff and the deceased defendant (Code, § 3058), since he is beneficially interested in the result.

APPEAL from the Circuit Court of Jackson.

Tried before the Hon. H. C. SPEAKE.

This was a contest as to the right to a homestead exemption in lands, between William R. Larkin, plaintiff in execution against Lemuel G. Mead, deceased, and Mrs. Mary F. Mead, his widow (now the wife of C. C. Keel), and her two infant children, as claimants. The case was before this court, on a former appeal, at its December term, 1880, when the judgment of the Circuit Court was reversed, and the cause was remanded. *Mead v. Larkin*, 66 Ala. 87. The tract of land claimed contained about one hundred and forty acres, and its value was proved to be from $1,200 to $1,500; and it was part of a larger tract, containing about four hundred acres, on which the said Lemuel G. Mead resided at the time of his death, which occurred on the 14th January, 1878. The plaintiff's judgment against said Mead, on which was issued the execution levied on the lands, was rendered on the 26th October, 1876. An execution on this judgment was issued on the 3d November, 1877, and levied on the entire tract of land; and this execution was returned by the sheriff, on the 19th December, 1877, "Ordered held up by plaintiff." Another execution was issued on the

[Keel v. Larkin.]

27th April, 1878, and returned on the 12th June, "No property found." A third execution was issued on the 16th October, 1878, and a fourth on the 3d January, 1879, each of which was returned "No property found." · An *alias pluries* was issued on the 26th March, 1879, and was levied on the entire tract of land; and at a sale under this levy, on the 9th May, 1879, made subject to the right of homestead exemption, the plaintiff himself became the purchaser, at the price of $200. The widow's claim of exemption, in behalf of herself and her infant children, was filed in the office of the probate judge, duly verified by affidavit, on the 31st May, 1879; and the plaintiff's affidavit contesting the claim was filed in the Circuit Court, on the 2d June, 1879.

The claimant filed a plea to the jurisdiction of the court, "because no contest of her claim was made in the Probate Court of said county, which has jurisdiction of the estate of said decedent; and this court only has jurisdiction to try the widow's claim of homestead, when the issues are made up in the Probate Court under section 2841 of the Code." In support of this plea, issue being joined on it, the claimant introduced in evidence her original claim of exemption filed on the 31st May, 1879, and the records of the said Probate Court showing that the estate of said Lemuel G. Mead was regularly declared insolvent by said Probate Court on the 25th November, 1881; that she thereupon filed her claim to the lands as a homestead exemption, in said Probate Court, on the 26th May, 1882; that notice thereof was given to the administrator, and the claim was still pending and undecided in that court. The court overruled and disallowed the plea, and issue was then joined on the grounds of contest.

The plaintiff's judgment was founded on two bonds, or promissory notes under seal, executed by said Lemuel G. Mead and one Samuel H. Lewis as joint obligors, dated December 4th, 1874, and payable one and two years after date respectively, to the plaintiff or order, with interest. Lewis signed the notes, or bonds, as the surety of Mead, and the action was brought against both of them ; but, Lewis not being served with process, the action was discontinued as to him, and judgment taken against Mead alone. A separate action was afterwards brought, and judgment recovered against Lewis. The plaintiff contended that the claim of exemption was excessive in quantity and value ; that the right of exemption, its value and extent, was governed by the statute which was of force in December, 1860, when the original debt was contracted which formed the consideration of said notes or bonds. In this connection, plaintiff proved that, on the 4th December, 1860, said Lemuel G. Mead executed his promissory note for $4,230, with plaintiff and several others as his sureties,

[Keel v. Larkin.]

payable to the executors of the last will and testament of Samuel Townsend, deceased; that on the 27th October, 1870, the surviving executor recovered a judgment on this note, against said Mead, Larkin (plaintiff), and another one of the sureties; that on the 20th February, 1871, plaintiff paid one-half of this judgment, which then amounted to $3,885.40, the other half being paid by the other surety; that on the 4th December, 1874, "there was a settlement between said Mead and Larkin, on account of Larkin's payment on said judgment as the surety of Mead," when said two notes or bonds were given for the balance due on account of said payment, after deducting the value of a tract of land which Mead had conveyed to his said sureties. R. C. Brickell, a witness for plaintiff, by whom the notes were written, and who was a party to the settlement, being asked "whether there was any agreement between Mead and Larkin that said notes should be taken as payment of the said debt from Mead to Larkin," answered, "I have no recollection that there was any agreement in reference to that matter." Said witness further testified, on cross-examination, that at the time said settlement was made there was a bill pending in the Chancery Court of Jackson county, by which Larkin was seeking to condemn a fund of about $2,000, which he had attached, to the satisfaction of his demand against Mead; and that this suit was dismissed, by the written directions of the plaintiff, on the execution and delivery of the two notes on the settlement.

Samuel H. Lewis, a witness for the defendants, testified "that he was present with said Mead and plaintiff, when the said bonds were signed, and at the time referred to by said Brickell. Defendants offered to prove by said witness relevant statements and declarations made by said Mead, in the presence and hearing of said plaintiff, at that time; to which plaintiff objected, because of Lewis' interest and Mead's death. The court sustained the objection, holding that said Lewis was incompetent to testify as to transactions had with, or statements made by said decedent; to which ruling and decision the defendants excepted." This was all the evidence offered in reference to the settlement, or the circumstances attending the execution of the notes.

The court charged the jury, in writing, as follows: "This is a proceeding known as a contest of the claim of exemption, set up by the defendants to the property levied on by the sheriff under an execution issued from this court in favor of W. R. Larkin, the plaintiff in the cause. The plaintiff claims to be a judgment creditor of Lemuel G. Mead, deceased, and the defendants are the widow and minor children of said Mead. The burden of proof in this issue is on the plaintiff, and it devolves on him first to show to your satisfaction that, at the time of the

[Keel v. Larkin.]

death of said Mead, he had a judgment against said Mead, and had issued and placed in the hands of the sheriff, while said Mead was in life, an execution on his said judgment; and further, that he had executions on his said judgment regularly issued and placed in the hands of the sheriff, without the lapse of an entire term intervening between the times of holding courts in this county, up to the time of the levy by the sheriff on the lands claimed by the defendants. The terms of the court were held by law in February and October; and if the jury find, from the proof, that between the October term, 1877, and the February term, 1878, an execution was issued, and received by the sheriff during the life-of the said L. G. Mead; and that executions were regularly issued between October and February of each year, and such executions were each received by the sheriff, up to the time the levy was made and claim of exemption filed by the defendants; then the plaintiff has shown his right to have the lands condemned and sold for the satisfaction of his debt, unless the lands so levied on are exempt from execution for the payment of debts. It is admitted by plaintiff, that the defendants are entitled to some exemption, to-wit: $500 worth of the land, including the homestead; and the defendants insist, that they are entitled to the entire tract claimed by them. Under our law, the amount of the exemption is to be determined by the law which was in force at the time the contract was made, or the debt created. The question, then, for the jury to determine, is, when was the liability of Mead to Larkin created. By our law, one who becomes the surety of another, upon payment of the debt by him, becomes entitled to every remedy which the creditor has against the principal debtor, to enforce every security and all means of payment, and to stand in the place of the original creditor; and no property can be claimed as exempt from such debt, in the hands of the surety, that could not be claimed as exempt from the original debtor. If, therefore, the jury find that Larkin became surety for Mead, and, as such surety, paid the debt, or a part thereof, then he is subrogated to the rights of Townsend's executor, and no property could be claimed as exempt by the defendants against Larkin which Mead could not have claimed against Townsend's executor, unless Larkin had made a new contract, by which the original debt was paid, and a new debt created. Mrs. Mead and her children occupy the same position that Mead would occupy, if he were living, and are entitled to all the rights and claim to exemption that he would have. *The fact that the execution first issued was held up by plaintiff, did not destroy the lien of such execution; and such lien, not being so affected or destroyed as to Mead, is not destroyed as to these defendants; and not being destroyed, the jury must receive such execution as though no such*

[Keel v. Larkin.]

*indorsement had been made on it.   The debt of Mead to Town-*
*send's executor, having been paid by Larkin, then became the*
*debt of Mead to Larkin; and the exemption law of 1860 applies*
*to this case, unless the evidence shows that the said debt has been*
*paid.*   The mere giving of the note by Mead and Lewis to Lar-
kin does not discharge or pay said old debt, unless there was an
agreement, at the time of the execution of said note, that such
note should be received in payment of said old debt; and whether
or not there was such an agreement, is for the jury to deter-
mine.   In determining whether there was such an agreement,
the jury must look to all the facts attending the settlement of
December 4th, 1874; such as, that the debt was then in judg-
ment in Madison county, the pendency of the suit in the Chan-
cery Court of Jackson county, the giving of the new note with
surety, the dismissal of said chancery suit, and all facts and cir-
cumstances attending such settlement as may be shown by all
the proof.   If the jury come to the conclusion, that the old
debt was settled and paid by the negotiations entered into by
and between Larkin and Mead, culminating in the execution of
said notes by Mead and Lewis, payable to Larkin, then the ex-
emption law which was in force in 1874 would be applicable,
and the verdict of the jury should be for the defendants.   *If,*
*however, the jury should find that the said notes of December*
*4th, 1874, were not* [given?] *in payment of the old debt, and re-*
*ceived by Larkin in payment of said debt, then the exemption*
*law which was in force in 1860 applies to this case;* and by that
law, lands in value not exceeding $500, including the improve-
ments, and in amount not exceeding 320 acres, would be exempt.
*Under the issue as framed in this case, the jury will have to as-*
*certain the value of the land conceded by plaintiff to be exempt,*
*to-wit,"* describing a portion containing about forty-five acres;
" *and their verdict must then be, ' We, the jury, find the issue*
*for plaintiff, and assess the value of' said land, 'at $———.' "*

To the several italicized portions of this charge, exceptions
were duly reserved by the defendants, and also to the following
charges given on request of the plaintiff:

1.   " Although the jury may find that Mead and Lewis, on
December 4th, 1874, gave the two notes in proof for the ante-
cedent debt of January, 1860, or so much thereof as Larkin had
paid as the surety of Mead; in such case, Lewis could plead the
exemption law of 1872-3, which allowed 160 acres, under his
contract; but neither said Mead, nor his widow and minor heirs,
could claim a greater exemption than existed to him, Mead, in
1860, when he entered into the original contract; and the ex-
emption or homestead, under that law (1860), was the residence
and lands of the value of $500."

2.   " The giving of a note for an antecedent debt will not

[Keel v. Larkin.]

operate in law to discharge such debt, unless at the time it was accepted as an absolute payment. *Prima facie*, such a transaction is to be considered as a collateral, or additional security; but, if there was an express agreement to receive such new note as a satisfaction, or payment of the old debt, then it would be a payment. It is incumbent on the person pleading such new note, as a satisfaction of the old debt, to show that there was an express agreement at the time to accept the new note as a payment, and not as an extension of the time of payment."

3. " Neither the taking of a new note with security, for an antecedent debt, nor the dismissal of a bill in chancery filed for the purpose of collecting the amount due the plaintiff on such antecedent debt, nor the taking of lands in part payment, will operate in law a payment or extinguishment of the antecedent debt, without more and other proof showing, clearly and satisfactorily, that it was the intention of the parties to give and accept such new notes as a payment; and it is incumbent on the person pleading such matters as a payment to show to the jury, clearly and satisfactorily, either by an express agreement between the parties at the time, that the notes were so given and accepted at the time, or to show to the satisfaction of the jury, from facts and circumstances equivalent to an express agreement, that both of the parties so gave and accepted the new notes at the time as a payment."

The defendants requested the following charges:

1. " If the jury find that Larkin abandoned his claim upon the judgment in favor of Townsend's executor, and dismissed the bill filed to collect the same, and relied on the said notes given on December 4th, 1874, and sued on the same, obtaining judgments against both Mead and Lewis; then the jury are authorized to presume that the said notes were taken in payment of the said judgment, and the exemption law of 1874 would govern the case, and the defendants would be entitled to 160 acres as exempt from execution sale."

2. " If the two notes of December 4th, 1874, were given by said Mead and Lewis, and received by Larkin, not as a renewal of the debt evidenced by the judgment in favor of Townsend's executor, but as payment of the balance due Larkin on said judgment; then such notes constituted a new debt, to which the exemption law of force in 1874 applies. The jury will consider whether or not a new security was given upon said notes, and whether or not the pending suit of *Larkin v. Mead*, to collect said judgment, was dismissed upon the delivery of said notes; and if they find that such new security was given, and such suit dismissed, they can look to these facts as tending to show that the notes were received, not as a renewal, but as a payment."

3. " If the jury find that Larkin abandoned his claim upon the judgment in favor of Townsend's executor, and dismissed the bill filed to collect the same, and relied on the notes given December 4th, 1874, and sued on the same, obtaining judgments against both Mead and Larkin ; the jury should consider these facts as tending to show that the said notes were taken in payment of the said judgment, and the exemption law of 1874 would govern this case, and the defendants would be entitled to 160 acres exempt from execution and sale."

4. "If the jury find, from the evidence, that an execution issued from Larkin's judgment on the 3d December, 1877, returnable to the next term of the Circuit Court of Jackson county, and was received by the sheriff, and was levied by him on the real estate of the said Lemuel G. Mead on the 14th December, 1877, and was held up by direction of the plaintiff, as recited and shown in and by the return thereon indorsed, and also that said Mead died on the 14th January, 1878 ; then the lien of the execution was lost, and the homestead rights of Mead's wife and children attached, and could not be defeated by a subsequent levy."

The court refused each of these charges, and the defendants excepted to their refusal ; and they now assign as error the several adverse rulings of the court on the pleadings and evidence, and in the charges given and refused.

WALKER & SHELBY, for appellants.

ROBINSON & BROWN, *contra*. (No briefs on file.)

SOMERVILLE, J.—A *contingent liability* is as fully protected against fraudulent and voluntary conveyances, as a claim which is certain and absolute ; and, as often decided, " one whose claim accrued from a contract in existence at the time such conveyance is made, is a *creditor* within the meaning of the statute of frauds."—*Fearn v. Ward*, 65 Ala. 33 ; *Bibb v. Freeman*, 59 Ala. 612 ; *Jenkins v. Lockard's Adm'r*, 66 Ala. 377 ; Brandt on Sur. § 258. The *rights of the surety*, or other contingent promisor, are regarded, for many purposes, as commensurate in point of time with the date of the suretyship, and not with the date when the surety actually paid the security debt for the principal. The claim of the surety, in other words, is considered as having existed, so far as to constitute him a creditor, at the time he incurred the contingent liability, being *debitum in presenti, solvendum in futuro ;* his subsequent payment of the debt extending back by relation to that date, although no demand, or right of action, technically accrues until a subsequent date. The surety is thus, in a certain sense, subrogated to the

rights of the creditor whose claim he has been compelled to pay.—Bump on Fraud. Convey. 488–489; *Seward v. Jackson,* 8 Cow. (N. Y.) 406; *Gannard v. Eslava,* 20 Ala. 732; *Cato v. Easley,* 2 Stew. 214; *Jenkins v. Lockard's Adm'r,* 66 Ala. 377.

2.　This principle applies to a claim of exemption preferred by a debtor, to property sought to be subjected to the satisfaction of a creditor's judgment.　Parties entering into contracts are presumed to have in view such exemption laws and rights as are in force at the date of the contract.—*Kelly v. Garrett,* 67 Ala. 304, 309; *Smith's Ex. v. Cockrell,* 66 Ala. 64; *Nelson v. McCrary,* 60 Ala. 301; *Gunn v. Barry,* 15 Wall. 610.　As against a surety, therefore, who has paid the debt of the principal, the right of the debtor to a homestead, or other exemptions, as to their value and extent are to be determined by the law which was in force when the contract of suretyship was entered into, and not by the law in force when the debt was actually paid; although, by express provision of the statute, the method and remedies for ascertaining and determining such exemptions are the same in each case.—Code, 1876, § 2844; *Fearn v. Word,* 65 Ala. 33; *Kelly v. Garrett,* 67 Ala. 309, *supra.*

The surety debt here created bears date December 4th, 1860; and the exemption allowed, if allowable at all, must be governed by the law in force at the date of its creation, *unless it was paid and extinguished* by the notes of Mead and Lewis, which are alleged to have been taken subsequently by Larkin in satisfaction of his claim against Mead.　These notes are two in number, each bearing date December 4th, 1874, and payable to Larkin, in the sum of six hundred and thirty-four 92–100 dollars.　They were executed by Mead as principal, with Lewis as his surety.

3.　It is clear that the mere renewal, or novation, of an old debt by a new one, would not affect the exemption rights of a debtor.　But, if the new obligation, taken by way of apparent renewal or extension, creates a different liability by reason of a change of parties, or otherwise, and is received with *the agreement* that it shall be taken in full payment and satisfaction of the original debt, it would clearly be otherwise.　The exemptions of the debtor in the latter instance, as against the creditor, would be measured by the law in existence at the date of the new obligation.

4.　Whether a new security of no higher nature, executed by a debtor, is taken in payment and discharge of a pre-existing debt, for which it is given, is a question of *intention.*—1 Greenl. Ev. § 519.　The giving of the debtor's own note or bill, even though negotiable, does not, according to what is deemed the better doctrine, as settled in this State, operate to discharge

[Keel v. Larkin.]

such debt, unless accepted in absolute payment. *Prima facie,* it is considered only as collateral, or additional security; but all the authorities are "in harmony as to the proposition, that by *express* agreement it may be regarded as a satisfaction and a bar."—*Day v. Thompson,* 65 Ala. 269.

5. We are also clearly of the opinion, that it may as well be proved likewise by an *implied* agreement of the contracting parties. Both express and implied contracts are founded upon the actual agreement of the parties, the only distinction between them being as to the mode of proof, or evidence by which they are substantiated.—Story on Contr. § 11. There are, no doubt, some cases so free from ambiguity, or opportunity for inference, as that a court could legally presume such intention; but, in all cases of doubt, it is well settled to be a matter proper for the determination of a jury, who would have a right to consider all the relevant circumstances of the case throwing any light upon the question of intention.—2 Parsons Contr. 267; *Myatts v. Bell,* 41 Ala. 222; 2 Greenl. Ev. §§ 527, 519; *Fulford v. Johnson,* 15 Ala. 386; *Hart v. Boller,* 15 S. & R. (Penn.) 162; 1 Addison Contr. § 333 (*note* 1). It is true that the English decisions have adopted the view, that there must be an *express* agreement, or else that the bills alleged to have been received in payment must have been negotiated and remained outstanding against the defendant; and some of the earlier American decisions concurred in this doctrine. But, as Mr. Parsons observes, the modern authorities seem to be coming together in support of the other view. "In almost all of the States except New York," he says, "we suppose the note or bill of the debtor, or of a third party, may be payment by *implied,* as well as by express agreement; for there is no reason why the parties should not indicate their intention by *actions,* as well as by *words.* Where an implied agreement may be shown that the bill or note was taken in payment, all the facts are to be considered by the jury."—2 Parsons Bills & Notes, pp. 159–161, *note* (t), and cases cited. This conclusion seems fully sustained by the authorities and we, think, is supported by sound sense and good reason. We, therefore, adopt it as the correct rule.

The charge of the court was opposed to this view, and the exception based on it must be sustained.

6. The lien of the execution was not lost or suspended by reason of the plaintiff's direction to hold it up. Where a writ of *fi. fa.* is issued and received by the sheriff during the life of the defendant, as was the case here, "it may be levied after his decease, or an *alias* issued and levied, *if there has not been the lapse of an entire term, so as to destroy the lien originally created.*"—Code, 1876, § 3213. It is clear that mere delay on the plaintiff's part, in executing his judgment, will not affect

[Keel v. Larkin.]

his lien, as against the defendant in execution, his personal representative, or heirs, who presumptively can not be prejudiced by it.—*Dryer v. Graham,* 58 Ala. 623. The principle upon which such a lien is lost by mere suspension is that of delay by the plaintiff for the purpose of favoring the defendant in execution, at the expense of other creditors, whose diligence may be thus paralyzed and rendered of no avail. It is, therefore, justly confined to junior creditors, mortgagees, or vendees who acquire intervening rights during the time the execution may be stayed by order of the plaintiff.—*Carlisle v. Godwin,* 68 Ala. 137; *Dryer v. Graham, supra; Johnson v. Williams,* 8 Ala. 529; *Dargan v. Waring,* 11 Ala. 988; Freeman on Ex. § 206; *Turner v. Lawrence,* 11 Ala. 427; *Patton v. Hayter,* 15 Ala. 18; 1 Brick. Dig. 899, § 140.

7. The Circuit Court was fully authorized, in our opinion, to try the issue involving the claim of exemption preferred by the defendants. We do not think the Probate Court was competent to do so, or even that the contest should have been inaugurated in that court, with the view of having the issue certified to the Circuit Court, under the provisions of sections 2838 and 2841 of the Code.—*Kelly v. Garrett,* 67 Ala. 304.

8. The execution against Mead, the decedent, was received by the sheriff during the life of the defendant; and the lien thus created was preserved, though the influence of the statute, by not permitting the lapse of an entire term without the continuous issue and levy of an *alias.*—Code, 1876, §§ 3213, 2633. Where this is done, the statute operates to authorize a sale of the land by the sheriff, in the same manner as if the defendant in execution were still living.—*Jones v. Ray,* 50 Ala. 599.

9. The Code does not seem to provide expressly for the regulation in detail of a claim of homestead exemption under these circumstances. Section 2840 has reference only to cases where the decedent did not, at the time of his death, reside on a homestead owned by him; in which event, the widow or minor children are authorized to select the homestead, from any other lands owned by the decedent. We think, upon clear principles of analogy, the provisions of section 2832 of the Code apply to this case with less friction of machinery than those of section 2841. The present execution was issued from a court of record, and necessarily returnable to the same tribunal. The section in question (2832) makes it the duty of the sheriff, or other officer, levying such process on a homestead, "to summon forthwith three disinterested householders," whose duty it shall be "to allot and set off the homestead" under certain regulations which are prescribed in detail; a leading and important feature of which is, that the whole proceeding of allotment is measurably dictated according to the election of the owner, with the

limitation only as to. value and acreage, and contiguity to the dwelling-house of the debtor, which with appurtenances is required to be included. These commissioners are required to make a return of their written report under oath, after the execution of this duty, to the sheriff, and he then files it in the court to which the execution is returnable.—Code, § 2832.

This course was not pursued in the present case. The sheriff made no appointment of the requisite commissioners, and hence there was no report which could be made the basis of the exemption contest, which the plaintiff in execution is required to inaugurate. Nor were the defendants, or claimants, afforded any opportunity to make their own selection, within the meaning of our constitution describing the homestead, which is authorized to be exempted from sale under legal process, as one "to be *selected* by the owner thereof."—Const. 1875, Art. x, § 1; Code, §§ 2820, 2832.

The court committed no error in striking out the plea to its jurisdiction, and in excluding from the jury as evidence the exemption proceedings in the Probate Court, to which the plaintiff in execution was never a party.

10. The testimony of the witness Lewis was properly excluded, so far as it related to transactions with the decedent, Mead. He was the surety of Mead on the judgment debt, which is the basis of the present proceeding, and was, therefore, interested in the result. The defendants held title in succession under Mead; and any diminution of the rights of his estate necessarily operates as a diminution of theirs, and *e converso*. The rule of exclusion established by the statute has been held to embrace many who are *beneficial*, though not *nominal* parties to suits.—Code, § 3058; *McCrary v. Rash*, 60 Ala. 374; *Key v. Jones*, 52 Ala. 238; *Drew v. Simmons*, 58 Ala. 463; *Louis v. Easton*, 50 Ala. 470; *Waldman v. Crommelin*, 46 Ala. 580; *Dismukes v. Tolson*, 67 Ala. 386.

The judgment of the Circuit Court must be reversed, and the cause remanded.

BRICKELL, C. J., not sitting.