# Steiner & Lobman v. Jeffries et al.

## *Action on a Bill of Exchange.*

1. *Action on a bill of exchange by an indorsee; payment; admissibility of evidence.*—In an action by an indorsee against the acceptor of a bill of exchange, where the defense interposed is payment by the drawer, a list of the drawer's liabilities to the indorsee, which was prepared several months after the alleged payment, by the drawer's book-keeper under his instructions and at the request of the indorser, and which list contained the acceptance sued on, is admissible in evidence as tending to show that the bill of exchange accepted by the defendant was still an existing, unpaid obligation to the plaintiff from the drawer.

2. *Same; same; same.*—In an action by an indorsee against the acceptor of a bill of exchange, where the defense interposed is payment of the bill by the drawer, the fact that several months after the time of the alleged payment, the drawer executed to the acceptor a note, in which, together with other liabilities, was included the bill sued on, is admissible in evidence as tending to show that on the date of the execution of said note, the drawer and the acceptor recognized the bill of exchange sued on as still due and unpaid.

3. *Same; insufficiency of evidence to prove payment.*—In an action by an indorsee against the acceptor of a bill of exchange,

where under the defense of payment by the drawer, set up by special plea, it is shown that at the maturity of the bill sued on, the drawer sent a check for the amount to the plaintiff bank, but the president of the bank refused to apply the check in payment of said bill, insisting on applying it to the liquidation of another indebtedness of the drawer, which was agreed to by the drawer, and the latter then instructed his bookkeeper to change the entry on the stub of the check book so as to show that the check was applied to the other debt, and not to the bill sued on, and the check was so applied to the other debt by the plaintiff, and afterwards, at the request of the plaintiff, the drawer made a list of his liabilities to it in which was included the bill sued on, and about the same time he executed to the acceptor a note in which was included, among other liabilities, the said bill sued on, the evidence is insufficient to show that the check delivered to the plaintiff was received in payment of the bill sued on; but on the contrary, it is sufficiently shown that the application of the check to the other indebtedness of the drawer was ratified by him, and that the bill of exchange was an existing unpaid liability.

4. *Same; acceptor has no right to control application of the proceeds of the check.*—The acceptor of a bill of exchange can not control the application of the proceeds of a check given by the drawer to the indorsee; and where at the time of delivery of such check, the drawer was otherwise indebted to the indorsee, it constitutes no ground of complaint to the acceptor, that before the check so delivered was collected, the drawer agreed with the indorsee that the proceeds therefrom should be applied to the other indebtedness, and that in accordance with such agreement the proceeds were so applied.

5. *Same; liability of accommodation acceptor; not entitled to demand for payment before suit.*—The liability of the acceptor of a bill of exchange not being affected by the fact that it was an accommodation acceptance, such acceptor is not entitled to a demand for payment before suit brought; and in an action on such bill of exchange against the acceptor, the fact that no demand was made on the defendant for payment before the institution of the suit is irrelevant and immaterial and not admissible in evidence.

APPEAL from the Circuit Court of Montgomery. Tried before the Hon. JOHN R. TYSON.

This is a suit by the appellees, L. E. Jeffries and E. Gillman, as the assignees of the Commercial Bank of Selma, which failed about the last of December, 1896, who were admitted to be the owners of the paper sued

on, against the appellants, Steiner & Lobman, for $2,-500, on a bill of exchange drawn May 9, 1896, on Steiner & Lobman, who accepted the same, by Maas & Schwartz, payable to the order of themselves five months after date, to-wit: Oct. 9-12, 1896. The sole defense was payment.

The evidence shows that Steiner & Lobman were accommodation acceptors and that the bank knew this; that the bank discounted the acceptance for value before maturity, and it was indorsed to it by Maas & Schwartz. The sole contention of defendants is that on October 12, 1896, the day the acceptance was due, Maas & Schwartz, the drawers, paid it to the bank by a check for $2,500 drawn on the National Park Bank of New York.

Converse, the bookkeeper of Maas & Schwartz, testified in behalf of defendants, that on October 12, by direction of Schwartz, he drew the National Park Bank check in favor of the Commercial Bank, and carried it to the bank, tendered it to Wilkins, vice-president, who had charge of the bank in the absence of the president, Nelson, in payment of the acceptance, and called for the acceptance; that Wilkins said he was instructed by Nelson not to give up the acceptance, and that he would keep the check until Nelson returned; that he (witness) then told Wilkins he must have either the check or the acceptance; that Wilkins kept them both, but agreed to return the check if it was not applied to the acceptance. It was also shown that Maas & Schwartz were largely indebted to the bank, and, among other things, owed it largely more than $2,500 on a foreign bill of exchange held by the Bank of Montreal, which had been due since the previous August; that when witness drew the check he charged it on the books of Maas & Schwartz against the acceptance sued on; that when Nelson returned on the 13th or 14th of October, Schwartz went to see him, and when he came back to his place of business directed the witness to charge the check against the Bank of Montreal paper, as Nelson had applied it, which witness did. It was further shown that witness, shortly after the failure of the Commercial Bank, by direction of Schwartz, made out a statement of the liabilities of Maas & Schwartz to the bank, which was shown to Schwartz, and among such liabilities included the acceptance sued on.

Schwartz, one of the firm of Maas & Schwartz, testified in behalf of defendants, that he insisted in his interview with Nelson that the check should be applied to the payment of the acceptance sued on, and never consented for it to be otherwise applied; but that Nelson flatly refused to do so. It was shown by the evidence that the check was paid, and a credit for the amount of it was entered, on the Bank of Montreal paper on October 19. The list of liabilities to the bank showed that Maas & Schwartz owed it on Steiner & Lobman acceptances $8,000. On January 1, 1897, Maas & Schwartz gave Steiner & Lobman their note for that amount and executed to them a mortgage to secure the payment of the same.

Nelson, the president of the bank, testified, in behalf of the plaintiffs, that in his interview with Schwartz on October 13th, he (Schwartz) consented that the check should be applied to the payment of the Bank of Montreal paper, that it was so applied, and that he (Nelson) refused to take the check in payment of the Steiner & Lobman acceptance.

On cross-examination of J. G. Converse, a witness for the defendants, after he had testified to his delivering the acceptance sued on to Wilkins, the vice president of the Commercial Bank of Selma, he was asked the following question: "Did Mr. Wilkins tell you that he would accept this (The National Park Bank check) in payment of the Steiner & Lobman acceptance?" The defendants objected to this question, upon the ground that it called for illegal and irrelevant testimony. The court overruled the objection, and the defendants duly accepted. The witness answered "No sir, he did not." The witness was then asked the following question: "Did Mr. Wilkins agree to accept that paper (the National Park Bank check) in payment of the Steiner & Lobman acceptance?" The defendants objected to this question, on the ground that it called for illegal and irrelevant testimony, and that it asked for the conclusion of the witness. The court overruled the objection, and the defendants duly excepted. The witness answered, "No, sir, he did not."

During the examination of this witness, he was shown a paper which he admitted was in his own handwriting, and he testified that it was made out during the latter

part of December, 1896, in obedience to the instructions of Mr. Schwartz of the firm of Maas & Schwartz; that this paper showed the liabilities and outstanding indebtedness of Maas & Schwartz, either as makers and indorsers to the Commercial Bank of Selma; that this paper was delivered to the plaintiffs as assignees of said bank, after it had been shown to Mr. Schwartz. There were included in this paper three items, which read as follows:

"2727.   Acceptance Steiner & Lobman, due 12-31-96. $3,000."

"2645. Acceptance Steiner & Lobman, due 12-19-96. $2,500."

"2450.   Acceptance Steiner & Lobman, due Oct. 12, 1896.   $2,500."

Upon the witness Converse being asked to read these items, the defendants objected on the ground that they called for illegal testimony; that neither the paper nor any part of it had any connection with these acts, and that it did not connect Steiner & Lobman, the defendants, with the paper. The court overruled the objection, and the defendants duly accepted. The witness further stated that the last named paper was the one for which the suit was brought, and that the paper which he read over was arranged by Maas & Schwartz for the assignees in the present suit.

Upon the cross-examination of Isaac Schwartz, a member of the firm of Maas & Schwartz, who was introduced as a witness for the defendants, he was asked if there was included in the statement showing his liabilities to the Commercial Bank of Selma, any liabilities on the Steiner & Lobman acceptances. The court overruled the defendants' objection to this question, and the witness answered that the particular property here sued on was included in said statement. After the witness had testified that the liabilities on the acceptances of Steiner & Lobman, as included in the statement referred to, amounted to $8,000, he was then asked, did he not give to Steiner & Lobman, on January 1, 1897, a note for $8,000. The defendants objected to this question, on the ground that it called for illegal and irrelevant testimony, and duly excepted to the court's overruling their objection. The witness answered: "I

don't know the exact amount, but about that amount."
There was then introduced a mortgage executed by Maas
& Schwartz to Steiner & Lobman on January 1, 1897, to
secure an indebtedness of $8,000, evidenced by their
promissory note of even date with the mortgage.

Upon the introduction of L. Steiner as a witness, he
testified that he was a member of the firm of Steiner &
Lobman. This witness was then asked the following
question: "Was any demand ever made on Steiner &
Lobman for the payment of the paper upon which suit
is brought?" The plaintiffs objected to this question,
upon the ground that Steiner & Lobman being acceptors
of the paper, no demand was necessary, and, therefore,
the testimony called for by the question was irrelevant.
This objection was sustained, and the defendants duly
excepted.

Upon introduction of all the evidence, the court at the
request of the plaintiffs gave to the jury the following
written charge: "If the jury believe from the evidence
that Maas & Schwartz assented to the application of the
check in question to the payment of the debt due to the
Bank of Montreal, then defendants have failed to make
out their plea of payment. In determining this the jury
may look to all the evidence, including the evidence of
what occurred between witnesses Converse and Schwartz
upon the return of the latter from the bank and the state-
ment made out and introduced in evidence showing the
liabilities of Maas & Schwartz to the bank on account
of the Steiner & Lobman debts, and on account of the
debt due to the Bank of Montreal." To the giving of
this charge the defendants duly excepted, and also sep-
arately excepted to the court's refusal to give each of the
following written charges requested by them: (1.)
"The jury in considering their verdict must look at the
fact, together with all the other evidence in the case,
that the acceptance sued on was due in October, 1896,
and no demand was made upon Steiner & Lobman there-
for until some time in December, 1896." (2.) "The
court charges the jury that if they are reasonably satis-
fied from the evidence that Converse tendered the check
for $2,500 on the National Park Bank to the Commer-
cial Bank in payment of the acceptance here sued upon,
and did so on the day said acceptance became due, and
that it was the custom of said bank to accept such New

York checks in payment, and the said Bank did afterwards collect this check, and the bank knew at the time of taking the acceptance that it was an accommodation paper on the part of Steiner & Lobman, then Mr. Schwartz and Gen. Nelson had no right to apply the money to any other paper than the Steiner & Lobman acceptance."

There were verdict and judgment for the plaintiffs. The defendants appeal, and assign as error the several rulings of the trial court to which exceptions were reserved.

GRAHAM & STEINER and P. H. PITTS, for appellant. The tender of the National Park Bank check by the book-keeper of Maas & Schwartz was the payment of the bill or exchange, or at least was the discharge of the acceptors—the present defendants. This is true, by reason of Steiner & Lobman being sureties. When the bank received the National Park Bank check, they took it incumbered with the specific directions for its application.—Brandt on Suretyship, §§283, 295, and cases cited; *Eason v. Isbell*, 42 Ala. 456; *Summerhill v Tapp*, 52 Ala. 227; 2 Brick. Dig. 326, §47; 18 Amer. & Eng. Encyc. of Law, 378, 386; *Fisher v. Stockebrand*, 26 Kan. 565.

The court below erred in refusing to allow the witness Steiner to testify that no demand had been made upon the defendants before the institution of the suit.—*Connerly v. Ins. Co.*, 66 Ala. 441; *Morris v. Bank*, 93 Ala. 511; *Cox v. Mechanics' Savings Bank*, 28 Ga. 529; Randolph on Commercial Paper, §1211.

TOMPKINS & TROY, *contra.*—The acceptors of the bill were primarily liable on it just as would be the makers of a promissory note.—*Capital City Ins. Co. v. Quinn*, 73 Ala. 560. That the bank knew that they accepted for the accommodation of Maas & Schwartz does not vary that liability.—*Connerly v. Ins. Co.*, 66 Ala. 441.

Payment by Maas & Schwartz to the bank would undoubtedly have extinguished the obligation of Steiner & Lobman. The only question is whether Steiner & Lobman paid the acceptance. Payment is an affirmative defense, and the burden is upon defendants to prove it.—3 Brick. Dig. 433, §392; 698, §1. Here, when we analyze the facts, there is no evidence in the

record of payment, and plaintiffs were entitled to the affirmative charge. A check was offered by Converse on behalf of Maas & Schwartz to the bank in payment of the acceptance. It was taken by the bank to be held until Nelson's return, but according to all the evidence, both Wilkins and Nelson expressly refused to accept it in payment. Primarily, payment must be made in money. The passing of money is the essence of payment.—18 Amer. & Eng. Encyc. of Law, 149, and authorities cited.

If a tender in the proper currency of the realm had been made and refused, no agreement to accept would have been necessary; but where money is not offered, a meeting of minds—consent of both parties—is necessary to make in law whatever else is offered a payment. Custom could not operate to make that a payment which only an agreement could effectually make so.—18 Amer. & Eng. Encyc. of Law, 150; 3 Randolph on Commercial Paper, §§1509, et seq.; Mooring v. Mobile &c. Co., 27 Ala. 258; Williams v. Costello, 95 Ala. 592; McWilliams v. Phillips, 71 Ala. 80; Lane v. Jones, 79 Ala. 156; Frank v. Thompson, 105 Ala. 220.

Where a check is given, it is presumed, as a matter of law, not to be a payment until it is collected. If there is no evidence of an agreement to accept it as payment, and the bank on which it is drawn fails before it is presented, no negligence of the holder intervening, there is no payment, and the original obligation remains in full force.—Bibb v. Snodgrass, 97 Ala. 459; Williams v. Costello, 95 Ala. 593; Lowenstein v. Bresler, 109 Ala. 329.

McCLELLAN, J.—The sole defense in this case is that of payment, by Maas & Schwartz, the drawers of the bill sued on.

1. In respect to this defense and the evidence introduced to sustain it, we may recall the familiar principles, that a party pleading or relying on payment must prove it (3 Brick. Dig. 433, §392); that, "when one claims that a debt, the prior existence of which is admitted or proved, has been paid by the substitution of another security, whether it be of higher or of the same dignity as the debt, he assumes the burden of proving that the substituted security was taken and accepted in extinguishment of the debt," (McWilliams v. Phillips, 71

Ala. 80) ; that the giving of the debtor's own note or bill, in payment or discharge of a preexisting debt, does not operate to discharge such debt, unless accepted in absolute payment; that it is considered as being, *prima facie,* only a collateral or additional security to the antecedent debt, *(Keel v. Larkin,* 72 Ala. 493, 501) ; that, primarily, payment must be made in money, and when one gives a check for a preexisting debt, the presumption of law is, that it is to operate as a payment only when it is cashed, and if the party giving the check insists that it was in payment of the debt, he must overcome this legal presumption or intendment, by evidence as full and satisfactory as is required to establish the payment or satisfaction of an admitted debt or demand.—*Lowenstein v. Bresler,* 109 Ala. 326; *Frank v. Thompson,* 105 Ala. 212, 220; *Williams v. Costello,* 95 Ala. 529: *Lane v. Jones,* 79 Ala. 156; 3 Rand. on Com. Paper, §1509.

2. The defendants attempted to prove the payment of the bill in the suit, by showing that on the day it was payable, the drawers, Maas & Schwartz, sent their bookkeeper, Converse, to the bank, with their check on the National Park Bank of New York, for a like amount, with instructions to take up the defendants acceptance with said check. The vice-president of the bank, Wilkins, declined to surrender the acceptance, stating that the president, who was absent, had instructed him not to do so, but retained both the check and the acceptance to submit the matter to the president, on his return, which was shown to have been either the next day or the day following. There is no conflict in the evidence, that on the return of the president, he refused to accept said check on account of said acceptance, or for the payment of the same, but sent it forward to the bank on which it was drawn, and applied the collection when made, to a bill past due and unpaid, drawn by Maas & Schwartz on the Bank of Montreal, London, England.

Schwartz, examined for defendants, stated that the next day after the check had been presented to the bank by Converse, as he had instructed him to do, Gen. Nelson, the president, sent for him, and insisted that Maas & Schwartz owed the bank other paper; that he had to retire the Bank of Montreal check for that purpose, and asked him, Schwartz, to get a renewal of the acceptance of Steiner & Lobman, which Schwartz informed Nelson he could not do, and that Nelson refused "flatly" to

allow the check to be used in payment of defendants'-acceptance.

Nelson testified, that his bank discounted for value the paper sued on, before its maturity, and that he had an agreement with Schwartz, the day after the paper fell due, that the National Park Bank check should be applied to the Bank of Montreal paper; that said check was sent forward to the bank on which it was drawn, and placed to the credit of the Commercial Bank, and that he sent the Commercial Bank's check to the Bank of Montreal; and the evidence tended to show, that the sum of $2,500 was paid on the last named debt, on the 19th of October, 1896. It is observable, that Mr. Schwartz was not called to deny, and did not deny, this statement by Nelson, of an agreement on his and Schwartz's part, that the check should be applied to the Bank of Montreal paper; but the other evidence in the case, apart from Nelson's, tends to show that he did agree with Nelson, to such application of the proceeds of the check, such as Nelson had deposed to. Converse, defendants' witness, for instance, testified that when he drew the check, he had entered on the stub of the check book, that it was on account of Steiner & Lobman's acceptance, but that, after Schwartz had his interview, the next day, with Nelson, and on his return from the bank, he instructed him, Converse, to change the entry on the stub-book, as to the account on which said check had been drawn, and make it as drawn on account of the Bank of Montreal, and it was so changed.

Furthermore, for purpose of showing that Maas & Schwartz did consent to such use of said check, the plaintiffs introduced other evidence, such as that in December, after the occurrences, the assignees of the bank called on Maas & Schwartz for a list of their liabilities to the bank, and Schwartz instructed their said bookkeeper, Converse, to make out such statement which he did, on the 1st of January, 1897, and exhibited it to Mr. Schwartz, before he delivered it to the assignees, and that on this list appeared acceptances of Steiner & Lobman for Maas & Schwartz, held by the bank, one, due December 19, 1896, for $2,500, another on December 31st, 1896, for $3,000, and the third, for $2,500, due October 12th, 1896, which last named acceptance, Converse swore was the bill sued on. Defendants ob-

jected to the introduction of this list of liabilities, on the ground that the paper was only evidence of liabilities of Maas & Schwartz, and though the last named parties might be liable on the bill sued on, it did not show that defendants were liable, and that the same was illegal and irrelevant as to defendants. The objection was overruled, and the court admitted the list of liabilities. There was no objection to its introduction on account of any other items appearing thereon, except as to the ones specified.

3. The plaintiffs, on the cross-examination of the witness, Schwartz, as to the liabilities of Maas & Schwartz on the defendant's said acceptances appearing on said list—amounting, as there appears, to $8,000— asked the witness, if he had not given a note (to defendants) on January 1, 1897, for $8,000, and he replied he had, for about that amount, and had given a mortgage to defendants to secure the payment of the note. The mortgage was proved and introduced in evidence, so far as appears, without objection. It bears date the 1st January, 1897, and recites as its consideration that Maas & Schwartz, the mortgagors, were indebted to defendants in the sum of $8,000 by their note of even date, payable to defendants on the 1st day of October, 1897. The defendants did object to the evidence of the witness, that he had, on the 1st of January, 1897, given defendants their note for $8,000, on the ground that the same was illegal and irrelevant, and called for illegal testimony.

There was no error in either of these rulings of the court, on the grounds interposed to the introduction thereof, as to the admission of the list of liabilities, and to the testimony of Schwartz, that he had given the $8,000, note on January 1, 1897, to defendants.

The entry on said list of liabilities of the obligation sued on, tended to show, that on the 1st of January, 1897, nearly three months after it is claimed they paid the same by their said check on the National Park Bank, Maas & Schwartz were carrying on their books the acceptance sued on, and had been to that time carrying the same, as an unpaid obligation to said bank. If it had been paid by said check, as claimed, it ought not to have appeared, thereafter, on Maas & Schwartz's books as an existing obligation to the bank. Moreover, it tended to corroborate the witness, Nelson, in his statement, that

Schwartz agreed before said check was collected that its proceeds, when collected, should be applied to the Bank of Montreal indebtedness, and not to the one sued on.

The evidence of Schwartz, that on the 1st of January, 1897, he gave a note for $8,000, to the defendants was, also, clearly admissible. The other evidence tended to show, that the bill sued on was included in that note. If so, that fact tended to show, that on the date of said note, Mass & Schwartz and the defendants, all recognized the paper as still due and unpaid, and that there had been no application of said check to the payment thereof.

4. The evidence is without conflict, that the check was not received when presented to the bank in payment of this acceptance. Converse, introduced by defendants and the only witness to the transaction, (Wilkins who, as vice-president of the bank, with whom Converse had the transaction, being dead), testified that Wilkins did not accept the check in payment of defendants' acceptance. If, therefore, the check is to be treated as a payment of said acceptance, it must be so treated, because the debtors, Maas & Schwartz, before its collection, instructed its proceeds, when collected, to be so applied. But, as has appeared, the evidence tends to show, without contradiction, that Schwartz agreed, the day after the check had been received, and before it was possible for it to have reached New York where it was payable, that it might go to the Bank of Montreal bill. The defendants certainly had no right or authority at any time to control the application of the proceeds of this check, when collected, to their debt. Maas & Schwartz and Nelson alone had the right to make this appropriation of the credit, and it was perfectly competent for them to do so, up to the time the check was collected, and its proceeds were applied.—18 Am. & Eng. Encyc. of Law, 244.

5. There was no error in refusing to allow the witness Steiner, one of the defendants, to answer the question, propounded by his counsel, if any demand had ever been made on his firm for the payment of the paper sued on. It is well settled, that an unconditional acceptance imports an engagement on the part of the acceptor to the payee or other lawful holder of a bill, to pay the same, according to its tenor, when it becomes due; that its effect is to constitute the acceptor the principal or

primary debtor, and, as such, he is not entitled to presentation or demand for payment; that generally, nothing but an actual payment or discharge will exonorate him, and further, that as to the right of the holder, it can make no difference whether the acceptance is one for value or for accommodation.—*Hunt v. Johnson,* 96 Ala. 130; *Capital City Ins. Co. v. Quinn,* 73 Ala. 560; *Connerly v. The Merchants & Planters Ins. Co.,* 66 Ala. 441, 443; Story on Bills of Exchange, §§113, 252; 1 Dan. on Neg. Inst., §§532, 543, 571; 2 Parsons on Notes & Bills, 27; 2 Am. & Eng. Encyc. of Law, 399. There was no error, therefore, in this ruling of the court.

6. From what has been said, the rulings on the charges given and refused are of easy disposition. The charge given for the plaintiffs was a correct proposition. That it was subject, in its latter part, to the vice of calling attention to particular evidence, is not available on appeal.

7. The first charge requested by defendants and refused was unsound. No demand was necessary to be made on defendants, at any time before suit. It was also abstract. There was no evidence that no demand was made on defendants "until some time in December, 1896," or at any time.

The last refused charge of defendants was also unsound. That defendants were accommodation acceptors did not affect their liability. The hypothesized fact, that it had been the custom of the bank to take New York checks in payments of demands, could not affect its refusal to do so in any particular instance, as the evidence tends to show it did in this case. Custom could not take the place of agreement.

Affirmed.

HARALSON, J., not sitting.