[Manser v. Sims, et al.]

# Manser *v.* Sims, *et al.*

## Bill to Foreclose Mortgage.

(Decided June 30, 1908.  47 South. 270.)

1. *Payment; Requisites; Payment by Note.*—Prima facie a note given for an antecedent debt will be considered as collateral or additional security and will not operate to discharge the debt unless it is accepted in absolute payment therefor; by express or implied agreement it may amount to a satisfaction.

2. *Same.*—The intention to discharge an antecedent debt by the giving of a note may be implied from the attending circumstances and the subsequent conduct of the creditor.

3. *Same; Burden of Proof.*—Where one lends money to another with which to purchase an interest in property, and takes a mortgage as security on the property, and subsequently the mortgagor sell the property to another together with other property, and on the same day the last purchaser executes to the original mortgagee a note in a sum amounting to the debt due from the original mortgagor and a mortgage embracing the property included in the original mortgage, the burden of proving that the note and mortgage last executed was accepted in extinguishment of the first mortgage and not as collateral security, rested on the two mortgagors.

4. *Same; Evidence; Sufficiency.*—The evidenec in this case examined and held sufficient to justify the finding that the last mortgage was taken and accepted in extinguishment of the first mortgage.

APPEAL from Mobile Chancery Court.

Heard before Hon. THOMAS H. SMITH.

Bill by Elizabeth Manser against Shelton Sims and others to foreclose certain mortgages. From a decree denying relief complainant appeals. Affirmed.

GREGORY L. & H. T. SMITH, for appellant. Joseph Espalla was not a bona fide purchaser for value without notice. He knew that M. S. Manser by lending her money to her son and son-in-law to pay the purchase money of the property which was purchased from him had become subrogated to his right to a vendor's lien.— *Knighton v. Curry,* 62 Ala. 404; *Newbold v. Smart,* 67

[Manser v. Sims, et al.]

Ala. 326; *Sawyers v. Baker,* 72 Ala. 49; *Truss v. Miller,* 116 Ala. 506; *Faulk v. Calloway,* 123 Ala. 325; *Motes v. Robertson,* 133 Ala. 630.

In order to avail of the defense of a bona fide purchaser one must allege and prove that he acquired the legal as distinguished from the equitable title.—*Craft v. Russell,* 67 Ala. 9; *Shock v. Southern B. & L. Assn.,* 140 Ala. 579; *O'Neal v. Seixas,* 85 Ala. 80. The burden rests upon those who set it up to show that the complainant agreed to accept the note and mortgage in full payment of her debt.—*McPherson v. Faust,* 81 Ala. 295; *Day v. Thompson,* 65 Ala. 269; *Patrick v. Patty,* 83 Ala. 420; *McWilliams v. Phillips,* 71 Ala. 80.

JAMES H. WEBB, and SHELTON SIMS, for appellee. Novation happened when the second mortgage was given. —*McDonald v. A. G. L. Ins. Co.,* 85 Ala. 414; 5 L. R. A. 415. The burden was on Manser to show notice of un-recorded mortgages.—*Steiner Bros. v. Tisdale,* 95 Ala. 91; *Dulin v. Hunter,* 98 Ala. 539; *Hodges v. Winston,* 94 Ala. 576. Under the deed the representatives of Elizabeth Camp could have gone into equity and forced Espalla to convey the legal title.—*Norwood v. Washington,* 136 Ala. 657; *Caperton v. Hall,* 83 Ala. 171.

DENSON, J.—This bill is filed by Elizabeth J. Manser to foreclose two mortgages executed to her—one by her son, Robert H. Manser, on the 11th day of March, 1889; and the other by her son-in-law, Stonewall J. Bowles, on the 18th day of November, 1889. The mortgagors allowed decrees pro confesso to be rendered against them. The other respondents, Shelton Sims, James W. Grove, Alfred D. Shelnut, and Robert E. Terry, claim to have acquired the property mortgaged, through conveyances from the mortgagors to Joseph Espalla, from Espalla to William H. Camp, and from Camp to them-

[Manser v. Sims, et al.]

selves. All these conveyances were executed after the mortgages sought to be foreclosed. But two defenses are presented by the respondents: First, that they are bona fide purchasers for value and without notice of the mortgages; second, that the mortgages were paid and satisfied by a subsequent note and mortgage executed to the complainant on the 25th day of May, 1891, by Joseph Espalla, who purchased the property from the mortgagors. The chancellor decreed against the foreclosure of the mortgages, and this appeal is prosecuted by the complainant from that decree.

If either of the defenses set up is established by the evidence, the decree should be affirmed. It is conceded that Joseph Espalla owned in severalty the land in controversy from May 13, 1888, to March 11, 1889, and that he was conducting a real estate business during this period. On the latter date Espalla conveyed to Robert H. Manser an undivided one-third interest, and on the 16th of November, 1889, he conveyed to Stonewall J. Bowles an undivided one-third interest, in the land. It is shown without conflict in the evidence that complainant loaned to her son and her son-in-law the money with which to pay Espalla for their interests in the land, and that as a part of their purchase contract Espalla conveyed to them, respectively, the real estate described in the mortgages. The mortgages were not filed for record until the 26th day of October, 1895. On the 25th day of May, 1891, Robert H. Manser and Bowles reconveyed to Espalla, with other property, the two one-third interests in the property which they had acquired from him, and which is described in the mortgages and the bill; and on the same day Espalla executed to complainant a note in the sum of $8,666.66 and a mortgage to secure it. This mortgage embraced all the property which is included in the mortgages sought to be fore-

closed, and the answer avers that "it was given in full satisfaction and settlement of the said indebtedness from Robert H. Manser and Stonewall J. Bowles to complainant."

The case of *Day v. Thompson*, 65 Ala. 269, cited and relied on by appellant, is one in which the question was whether or not an account due from the defendant debtor to the plaintiff was settled by the acceptance by the plaintiff of a bill of exchange drawn by a domestic bank on a New York bank and indorsed by the defendant. In discussing the law of the case the court said: "It is well-settled doctrine, in the general law commercial, both in England and the United States, that the giving of a negotiable bill or note for an antecedent debt will not operate to discharge such debt, unless it was accepted in absolute payment. Prima facie it is to be considered as collateral or additional security; but by express agreement it may be a satisfaction and a bar." In *Keel v. Larkin*, 72 Ala. 493, a case which involved the question whether the taking of the promissory note of a debtor by the creditor for an antecedent debt would operate in law to discharge such debt, the trial court gave at the request of the plaintiff charges 2 and 3, which in effect required the jury to find that there was an express agreement to take the note in discharge of the debt before it would operate such discharge. The court, speaking through the same judge (Somerville) who wrote the opinion in *Day v. Thompson;* after holding that whether a new security, of no higher nature, executed by a debtor, is taken in payment and discharge of a pre-existing debt for which it is given, is a question of intention, and after repeating the law as stated in *Day v. Thompson* in respect to express agreement, said: "We are also clearly of opinion that it may as well be proved by an implied agreement of

the contracting parties. Both express and implied contracts are founded upon the actual agreement of the parties; the only distinction between them being as to the mode of proof or evidence by which they are substantiated. There are, no doubt, some cases so free from ambiguity, or opportunity for inference, as that a court could legally presume such intention; but in all cases of doubt it is well settled to be a matter proper for the determination of a jury, who would have a right to consider all the relevant circumstances of the case throwing any light upon the question of intention. * * * It is true that the English decisions have adopted the view that there must be an express agreement, or else that the bills alleged to have been received in payment must have been negotiated and remained outstanding against the defendant; and some of the earlier American decisions concurred in this doctrine. But, as Mr. Parsons observes (2 Parsons on Bills, pp. 159-161, note 't'), the modern authorities seem to be coming together in support of the other view." So that it is no longer a question of doubt in this jurisdiction that the intention to discharge the antecedent debt may be implied, and that this implication may arise or be inferred from proof of the attending circumstances, and the subsequent conduct of the creditor may be looked to in arriving at a conclusion in respect to it.—2 Parsons on Contracts, 267; 21 Am. & Eng. Ency. Law (2d Ed.) 669, and cases cited in note 5 to the text; *Keel v. Larkin, supra; Lane & Co. v. Jones,* 79 Ala. 156.

In the light of these principles, and of the further principle that the respondents carry the burden of proving that the substituted note and mortgage of Espalla were taken and accepted, in extinguishment of the debts of the son-in-law, and not as collateral or additional security thereof (*McWilliams v. Phillips,* 71 Ala.

80; *Steiner v. Jeffries,* 118 Ala. 573, 24 South. 37) we must determine whether this defense is made out by the evidence. The evidence shows without conflict that Espalla, Robert H. Manser and Stonewall J. Bowles were in partnership in the real estate business, each owning a one-third interest, and that the lands conveyed by Espalla to complainant formed a part of the assets of the firm; that Manser and Bowles were indebted to complainant in the sum of $8,666.66; that Manser and Bowles sold their interests to Espalla, on the date heretofore named, on time, and that it was agreed by Manser, Bowles, and Espalla that, instead of giving notes and mortgage to Robert H. Manser and Stonewall J. Bowles for the purchase money, Espalla should give them to the complainant in the sum named and on the real estate that belonged to the firm and which had been purchased by Espalla. The note and mortgage were given to complainant on the same day that Robert H. Manser and Bowles sold and conveyed their interests to Espalla, and she accepted them; but the critical question—the one in respect to which there is some conflict in the evidence—is, did she accept them, intending thereby to discharge the antecedent debts of Manser and Bowles? The effect of Mrs. Manser's evidence, brought out on the direct examination, is that the Espalla mortgage was given to her to secure the debt that he owed her, and that this debt was constituted of that due and owing to her by her son and son-in-law. On the cross-examination she testified that her son and son-in-law drew out of the business, and induced Espalla to assume their indebtedness to her, and that he gave the mortgage to secure the assumed debt. She further testified that on the same day the mortgage was executed by Espalla, and prior to its execution, her son and son-in-law executed to Espalla a warranty deed, conveying

their interests in the property, so that he could mort-
gage the entire interest to her, and that she was aware
that this was done and of the purpose for which it was
done; that she put the Espalla mortgage on record right
away, but did not record the mortgages from her son
and son-in-law until several years after the recording of
the Espalla mortgage. On the redirect she testified
that at the time the Espalla mortgage was given she did
not give up the mortgages of her son and son-in-law,
and that she did not at that time agree to release them
from the debt, and that they were not yet released. To
the question, "Was there anything said between you and
Espalla or between you and your son, or between you
and your son-in-law, about your taking the Espalla mort-
gage in payment of the debts due by your son and son-in-
law?" she answered: "No, sir; not until the amount
was paid."

It must be conceded that Robert H. Manser and Bow-
les testified, in effect, that the Espalla mortgage was
given as collateral security, and not in settlement of
their debt to complainant. Espalla's evidence is to
the effect that his mortgage to complainant was given
in full satisfaction of the debts due her from her son
and son-in-law. The mortgages from R. H. Manser and
Bowles to the complainant each embraced a one-third
interest in 12 pieces of real estate. The entire inter-
est in 7 of the 12 pieces was embraced in the mortgage
from Espalla to Mrs. Manser, while 5 of the pieces
were omitted from the mortgage. Besides the 7 pieces
embraced in the mortgage from Espalla, there were em-
braced 18 other lots. The mortgage was placed on re-
cord the day, or the day after, it was executed; while
the mortgages from R. H. Manser and S. J. Bowles were
not recorded until more than four years subsequent to
the recording of the Espalla mortgage. The mortgage

from Espalla contains a provision to the effect that Espalla might sell any of the property mortgaged at any time, and apply the proceeds to the payment of the mortgage debt, less the express, and that the mortgagee would cancel the mortgage "to the extent of any piece of property that might be sold." It is further stipulated in the mortgage that, if Espalla should fail to pay the debt at maturity, the mortgage would extend the mortgage for six months. All amounts realized from sales of lots or payments made by Espalla were credited on the record of the Espalla mortgage. No attempt has been made to foreclose the mortgages given by Manser and Bowles, prior to the filing of this bill. No payments had been made on them, and no credits had been indorsed thereon or entered upon the records thereof.

The debts for which they were given as security are barred by the statute of limitations. *McKenzie v. Matthews,* 44 South. 958. The evidence shows that Mrs. Manser made no claim under the mortgages during 14 years from the time the Espalla mortgage was given until the filing of this bill. She has released property in the Espalla mortgage, which was also in the Bowles and Manser mortgages, without asserting any claim to it under those mortgages. To the contrary, when she received the money for such property, she asserted that she had no other claim thereon. She also stated to Mahorner, an attorney representing the interests of a client, who visited her to ascertain if she claimed the property under the Manser and Bowles mortgages, that she did not. The evidence further shows that the Manser and Bowles mortgages were listed against her for taxation, and that she appeared before the board of revenue and had them removed from the tax lists, but paid the taxes on the Espalla mortgage. Viewing Mrs. Manser's evidence in the most favorable light, we are of the

opinion that it strongly tends to show she understood, at the time she accepted the Espalla note and mortgage, that they were given for the purpose of extinguishing the debts she held against Manser and Bowles; and a careful consideration of the whole evidence leads us to the conclusion that the note and mortgage were given, and by Mrs. Manser accepted, in satisfaction of those debts.

We therefore concur with the chancellor in his conclusion, and order an affirmance of the decree dismissing the bill. This conclusion renders unnecessary a consideration of the defense of "innocent purchaser."

Affirmed.

TYSON, C. J., and DOWDELL, SIMPSON, and ANDERSON, JJ., concur.